MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 2
Docket:       Was-18-232
Argued:       November 7, 2018
Decided:      January 3, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:     MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Dissent:      ALEXANDER, J., and SAUFLEY, C.J.

IN RE CHILDREN OF MARY J.

JABAR, J.

[¶1]  The Passamaquoddy Tribe (Tribe) appeals from an order of the District Court (Calais, *D. Mitchell, J.*) denying the Tribe's motion to intervene in a child protective action involving nonmember children, following the removal of the children from the custody of their mother, who resided within the Tribe's territory.  The Tribe contends that the court erred in determining that the Department of Health and Human Services' removal of the children from its territory was not impermissible state regulation of an internal tribal matter. *See* 30 M.R.S. § 6206(1) (2017).  Because we find no error in the court's determination, we affirm the court's denial of the Tribe's motion for intervention of right, filed pursuant to M.R. Civ. P. 24(a)(2), and the denial of the Tribe's motion for permissive intervention, filed pursuant to M.R. Civ. P. 24(b).

## I. BACKGROUND

[¶2]  The following is derived from the court's factual findings, all of which are supported by competent evidence in the record.  *See Grondin v. Hanscom*, 2014 ME 148, ¶ 8, 106 A.3d 1150 ("A factual finding is clearly erroneous only if no competent evidence supports it.").

[¶3]  In September 2017, the Department filed a child protection petition alleging neglect by both the mother and the father of several children.  *See* 22 M.R.S. § 4032 (2017).  Although the mother is a member of the Passamaquoddy Tribe, neither the father nor the children are members, or eligible to become members.[1]  At the time the petition was filed, the children were living with the mother on the Passamaquoddy reservation at Indian Township.

[¶4]  In February 2018, the Department requested a preliminary protection order, seeking custody of the children.  *See* 22 M.R.S. § 4034 (2017). The mother waived her right to a summary preliminary hearing except as to the issue of placement.  She requested that the children be placed with their maternal grandmother, who is also a member of the Passamaquoddy Tribe, and who lives on the reservation.  After a hearing, the court denied the mother's

---

[1]  Because the children are not members, or eligible to become members, of the Tribe, the Indian Child Welfare Act (ICWA), 25 U.S.C.S. §§ 1901-1963 (LEXIS through Pub. L.  115-281), does not apply.

request and allowed the Department to seek foster placement.[2]    The Department placed the children in foster care outside of Indian Township.

[¶5]   Following the Department's removal of the children from their mother's care, the Tribe filed a motion to intervene, alleging that Maine Rule of Civil Procedure 24(a)(2) provided for intervention of right, because the Department's removal of the children from the Tribe's territory constituted impermissible state regulation of an "internal tribal matter[]."  *See* 30 M.R.S. § 6206(1).  Alternatively, the Tribe sought permissive intervention, pursuant to Rule 24(b), asserting that the underlying child protective action and its claim of tribal sovereignty have a question of law in common.  The court denied the Tribe's motion to intervene, and the Tribe timely appealed.  *See* M.R. App. P. 2B(c)(1).[3]

## II.  DISCUSSION

[¶6] Rule 24(a)(2) permits a nonparty to intervene, as a matter of right, if three criteria are met: "(1) [the nonparty] must claim an interest in the

---

[2]   Although the court declined to place the children with the grandmother, she was granted intervenor status without objection by the Department.  *See* 22 M.R.S. § 4005-(D)(5) (2017).

[3]   Because the Tribe is appealing from the denial of a motion to intervene, there is no final judgment at issue.  However, we have "recognized an exception to the final judgment rule for appeals challenging the denial of a motion to intervene.  The exception applies whether the party sought intervention of right or permissive intervention."  *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911 (citations omitted).

property or transaction that is the subject of the action; (2) it must be so situated that the disposition of the action may impair or impede its ability to protect its interests; and (3) its interests must not be adequately represented by the existing parties to the action." *Bangor Publ'g Co. v. Town of Bucksport*, 682 A.2d 227, 231 (Me. 1996). Alternatively, permissive intervention is available when a "[nonparty's] claim or defense and the main action have a question of law or fact in common" and intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." M.R. Civ. P. 24(b).

[¶7] Under either path for the Tribe's intervention, the pivotal issue before us is whether the court's order, issued pursuant to Title 22, granting the Department custody of children in jeopardy constitutes an impermissible state intervention into "internal tribal matters." *See* 30 M.R.S. § 6206(1).

[¶8] We review the denial of a motion to intervene for error of law or abuse of discretion. *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911. Where the court's decision turns on a question of law, we review the issue de novo. *See Passamaquoddy Water Dist. v. City of Eastport*, 1998 ME 94, ¶ 5, 710 A.2d 897.

A.      Internal Tribal Matters and Intervention of Right

[¶9]  The Maine Indian Claims Settlement Act (Settlement Act), 25 U.S.C.S. §§ 1721-1735 (LEXIS, 2015 U.S.C.S. Archive), and the Maine Indian Claims Settlement Implementing Act (Implementing Act), 30 M.R.S. §§ 6201-6214 (2017), were the result of a comprehensive settlement between the Penobscot Nation, Passamaquoddy Tribe, and the State of Maine, resolving the Tribe's and Nation's claims to vast swaths of Maine land.  *See Francis v. Pleasant Point Passamaquoddy Hous. Auth.*, 1999 ME 164, ¶ 6, 740 A.2d 575.  As a result of these acts, Maine exerts greater jurisdiction over these Tribes than other states.[4]  *See id.*; *Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 12, 770 A.2d 574 ("The relationship between the State of Maine and the Tribes is not governed by the general federal laws," but rather "occurs in a framework that is unique to Maine.").

[¶10]  The Implementing Act lays out the specific contours and limitations of this unique relationship between the State of Maine and the Tribes, and describes the powers and duties of the Tribes within their respective territories as follows:

---

[4]  The Houlton Band of Maliseet Indians were later added to the Implementing Act, although the Band does not retain the same jurisdiction as the Penobscot Nation and Passamaquoddy Tribe do. *See* P.L. 1981, c. 675 (codified at 30 M.R.S. §§ 6203(2-A), 6205-A, 6206-A, 6208-A (2017)).

> Except as otherwise provided in this Act, the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, including, but without limitation, the power to enact ordinances and collect taxes, and shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, provided, however, that *internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State.*

30 M.R.S. § 6206(1) (emphasis added).  Thus, pursuant to the Implementing Act, the Tribes are treated like municipalities except with regard to "internal tribal matters."  *See Penobscot Nation v. Stilphen*, 461 A.2d 478, 488 (Me. 1983).

[¶11]  In arguing that the Department's actions interfered with internal tribal matters, the Tribe specifically points to the "right to reside within the respective Indian territories," and asserts that, by placing the children in a foster home that is not on Passamaquoddy territory, the Department has interfered with an internal tribal matter.  Based on this assertion, the Tribe claims a right to intervene in this child protective matter.  As discussed below, the plain meaning of "right to reside within the respective Indian territories" does not support the Tribe's position.

[¶12]  To interpret the term "right to reside," we first look to the plain meaning of the statutory language in the context of the whole statutory scheme.

*See State v. Stevens*, 2007 ME 5, ¶ 5, 912 A.2d 1229. The United States Supreme Court has long recognized that Indian tribes have the right to determine who may and may not reside within their respective territories, subject only to the plenary control of the United States Congress. *See Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 561 (1832); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). This right is specifically memorialized in section 6206(1) of the Implementing Act, which the Tribe has recognized as giving it the "unquestioned right to determine if and when a person may reside within Indian Territory." *Indian Twp. Passamaquoddy Reservation Hous. Auth. v. Socobasin*, No. P93-C-03, 1994 Passamaquoddy App. LEXIS 2, at *7-8 (July 4, 1994).

[¶13] The statutory language of section 6206(1) is plain on its face: the State is prohibited from regulating "the right to reside within the respective Indian territories." 30 M.R.S. § 6206(1). Here, neither the court nor the Department has, or is, attempting to regulate who may or may not reside within an Indian territory. As the court correctly held, a child protective proceeding in no way "calls into question the right of the Tribe to determine who is able or not able to reside on its reservation or within its territory."[5]

---

[5] In a child protective proceeding, it is the court's obligation to determine whether to terminate or suspend an individual's parental rights because that individual's child is in circumstances of

[¶14] In addition, the Implementing Act specifically acknowledged and retained the existing structure of the Indian Child Welfare Act (ICWA). *See* S. Rep. No. 96-957, at 15 (1980) (stating that the Settlement Act "specifically continues the applicability of . . . the Indian Child Welfare Act, and all other federal Indian statutes to the extent they do not affect or preempt authority granted to the State of Maine under the terms of the settlement"); 30 M.R.S. § 6209-A(1)(D) (granting exclusive jurisdiction over "Indian child custody proceedings to the extent authorized by applicable federal law . . . ."). If the children who are the subject of this action were members of the Tribe, or eligible to become members, then the ICWA would apply and the Passamaquoddy court would be able to assert jurisdiction over these children, or at a minimum, the Tribe would have had the statutory right to intervene in this case. *See* 25 U.S.C.S. § 1911 (LEXIS through Pub. L. 115-281); 30 M.R.S. § 6209-A(1)(D).

[¶15] Finally, the Tribe's urged construction is at odds with our broader interpretation of what constitutes an internal tribal matter. In determining

---

jeopardy. *See* 22 M.R.S. §§ 4035, 4055 (2017). If the court determines that the child is in jeopardy, it must then determine how best to protect the child. *See* 22 M.R.S. § 4036 (2017). In this case, the court determined that the mother's children were in circumstances of jeopardy and that to best protect the children it had to remove them from her custody. *See* 22 M.R.S. §§ 4034, 4035, 4036, 4036-B (2017). The mother does not contest that determination.

whether something constitutes an internal tribal matter, we have looked to the factors announced by the First Circuit in *Akins v. Penobscot Nation*, 130 F.3d 482, 486-87 (1st Cir. 1997).[6]  The *Akins* factors, which are nonexclusive and nondispositive, include: "(1) the effect on nontribal members, (2) & (3) the subject matter of the dispute, particularly when related to Indian lands or the harvesting of natural resources on Indian lands, (4) the interest of the State of Maine, and (5) prior legal understandings."  *Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 49, 770 A.2d 574 (applying the *Akins* factors to determine that the Maine Freedom of Access Act does not apply to the Penobscot Nation when it is engaged in self-governance).

[¶16]  When the *Akins* factors are applied here, the subject matter of this action—the children—are nonmembers, and stand to be the most affected by its outcome.  Moreover, the State has a well-established *parens patriae* interest in the safety and well-being of the children within its jurisdiction.  *See In re Emma B.*, 2017 ME 187, ¶ 12, 169 A.3d 945 (citing *Prince v. Massachusetts*,

---

[6]  Shortly after the enactment of the Implementing Act, we used the familiar canon of *esjudem generis*—"that a general term followed by a list of illustrations is ordinarily assumed to embrace only concepts similar to those illustrations"—to construe "internal tribal matters" as encompassing only the concepts similar to those explicitly listed after it.  *Penobscot Nation v. Stilphen*, 461 A.2d 478, 489-90 (Me. 1983) (determining that an otherwise unlawful high stakes beano game was not similar to the listed matters because those matters did not directly bring the Penobscot Nation into conflict with state laws of general application).  However, in more recent cases, we have consistently applied the *Akins* factors, and continue to do so here.  *See Great N. Paper*, 2001 ME 68, ¶ 49, 770 A.2d 574; *Francis v. Dana-Cummings*, 2008 ME 184, ¶¶ 13-17, 962 A.2d 944.

321 U.S. 158, 166 (1944)); *see also* 22 M.R.S. § 4003 (2017), *amended by* P.L. 2017, ch. 411, §§ 5-7 (effective Aug. 1, 2018) (codified at 22 M.R.S. § 4003(2), (3-A), (3-B)). Finally, there is a prior legal understanding that the ICWA, which provides the protections and procedures that the Tribe argues for here, does not apply in this case. *See* 25 U.S.C.S. § 1903(4). All of these factors weigh against a determination that an "internal tribal matter" is at issue here.

[¶17] Accordingly, the court did not err by determining that the removal of nonmember children from the custody of their mother, pursuant to a properly issued child protection order, did not constitute impermissible state regulation of an internal tribal matter. For that reason, the court properly denied the Tribe's motion for intervention of right. *See* M.R. Civ. P. 24(a).

B.     Permissive Intervention

[¶18] As an alternative to its claim for intervention of right, the Tribe asserts that it should be permitted to intervene pursuant to Maine Rule of Civil Procedure 24(b), again relying upon the argument that its participation in the case is necessary to protect the Tribe's sovereign power to decide who may or may not reside within Passamaquoddy territory.[7] For the reasons already

---

[7] As part of its motion to intervene, the Tribe implies that by removing the children from Indian Township, the children would miss out on being exposed to the Tribe's culture, language, and community. The Tribe asserts that it is important that the children have such exposure, regardless

discussed, we do not find the Tribe's underlying argument persuasive, and conclude that the court did not abuse its discretion by denying the Tribe's motion for permissive intervention.  *See* M.R. Civ. P. 24(b); *In re N.W.*, 2013 ME 64, ¶¶ 12-13, 70 A.3d 1219 (stating that the interest of both the children and the Department is "the prompt adjudication of a permanent and safe living arrangement" for the children).[8]

The entry is:

> Judgment affirmed.

_____

ALEXANDER, J., with whom SAUFLEY, C.J., joins, dissenting.

[¶19]  This child protective action involves children who have been living with their mother, a member of the Passamaquoddy Tribe, on the

_____

of their nonmember status, because the children's mother is a member, and the children were living within the Tribe's territory.

The court recognized this concern, and noted that the mother was free to bring her, and the children's, cultural traditions to the court's attention at the hearing.  In addition, the grandmother of the children, also a member of the Tribe, was permitted to intervene in this action pursuant to 22 M.R.S. § 4005-(D)(5).  *See supra* n.2.  Like the mother, the grandmother is also able to bring concerns regarding the children's culture to the court's attention.

[8]  While the Tribe may not intervene in this action, the Department represented at oral argument that it would not object to the continued participation of the Tribe through interested-person or participant status.  Interested person status would allow the Tribe to remain informed regarding the proceedings and attend all hearings.  *See* 22 M.R.S. § 4005-D(2)-(3) (2017).  As a participant, the Tribe would be permitted to both attend all hearings and be heard in the proceedings about cultural and other matters. § 4005-D(4).

Passamaquoddy Reservation at Indian Township. The children's mother is urging a kinship placement[9] with the children's maternal grandmother, who is also a member of the Passamaquoddy Tribe. The grandmother has been granted intervenor status. M.R. Civ. P. 24(b).

[¶20] The children's mother, their grandmother, and the Passamaquoddy Tribe itself each have a legitimate interest in preserving the children's access to and participation in the tribal culture that would be fostered through a continuing relationship with the Tribe. As the Court recognizes in its opinion *In re Children of Shirley T.*, 2019 ME 1, ¶ 13, --- A.3d ---, also published today, preserving access to tribal culture is important for children with a parent or parents who are members of a tribe. *Shirley T.* quotes the federal Indian Child Welfare Act, enacted in 1978, which states "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions," and "that the States . . . have often failed to recognize the essential tribal relations of Indian people

---

9 *See* 22 M.R.S. §§ 4003(3-A), 4062(4) (2017) (instructing the Department to give preference to an adult relative over a nonrelated caregiver when determining placement for a child). These subsections have since been amended to include a reference to the newly enacted 22 M.R.S. § 4005-G. *See* P.L. 2017, ch. 411, §§ 5, 11, 13 (effective Aug. 1, 2018).

and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C.S. § 1901(4)-(5) (LEXIS through Pub. L. No. 115-281).

[¶21] In the matter before us, for the safety of the children, the District Court (Calais, *D. Mitchell, J.*) rejected the request to place the children in a kinship placement with their maternal grandmother. Instead, it authorized the Department of Health and Human Services to seek a foster placement for the children off the reservation and with caregivers who are not related to the children and are not members of the Passamaquoddy Tribe.

[¶22] With the prospect of the children being removed from their Passamaquoddy relatives and the reservation community, the Passamaquoddy Tribe sought to intervene as a matter of right or, alternatively, with the court's permission. M.R. Civ. P. 24(a)(2), (b). The Tribe argued that, pursuant to 30 M.R.S. § 6206(1) (2017), the children's right to reside with their relatives on the reservation constituted an "internal tribal matter" that "shall not be subject to regulation by the State." Accordingly, the Tribe argued that it had an independent interest and a right to at least be heard regarding proper placement of the children.

[¶23] The District Court denied the Tribe's motion to intervene, and the Court today affirms. From the Court's affirmance of the denial of the

14

Passamaquoddy Tribe's effort to be heard regarding placement of children of a member of the Passamaquoddy Tribe who have lived on the Passamaquoddy Reservation, we respectfully dissent.

[¶24]  Although we concur with the Court's determination that the Tribe's concern about removal of the children from the reservation does not constitute an internal tribal matter that would allow the Tribe to intervene as a matter of right, that conclusion does not decide the issue.  As the Tribe asserts, their participation in decisions related to the placement and resources available to the children are matters of importance to the court in addressing the needs of the children, whose mother is a member of the Passamaquoddy Tribe.  The Tribe's role, distinct from the role of family members, is important in informing the court of options regarding tribal resources and connections to tribal culture.  As the Tribe argues, "[g]iven the well-established, horrific history of forced acculturation and state agencies removing children from their tribal families and forcing them to live off the reservation," the Tribe's request to remain a resource for the children and the court is compelling.

[¶25]  Although the Tribe's argument that these factors and this history give it a right to participate pursuant to 30 M.R.S. § 6206(1) is unpersuasive on the facts of this case, these factors and this history demonstrate that, in the

proper exercise of its discretion, the District Court should have found a method of involvement for the Tribe that would benefit the children. *See* 22 M.R.S. § 4005-D(1)(C)-(E) (2017).[10] With such involvement, the District Court could properly consider information from the Tribe regarding conditions and resources on the reservation and important cultural factors that may favor the children returning to reside on the reservation or having continued meaningful contact with members and the culture of the Tribe.

[¶26] In a footnote, the Court does suggest other ways the Tribe might be allowed to participate. *See supra* note 8. However, those alternatives do not appear to have been considered by the parties, and there is no certainty of any participation on remand. We would vacate the trial court's denial of the Tribe's motion to intervene and remand for the court to consider which type of participation by the Tribe would best allow the Tribe to have meaningful input regarding the children's connection to their Indian heritage.

---

[10] 22 M.R.S. § 4005-D has since been revised, but subsections (1)(C)-(E) are unchanged. *See* P.L. 2017, ch. 411, §§ 8-9 (effective Aug. 1, 2018).

Arnold S. Clark, Esq. (orally), Fletcher Mahar & Clark, Calais, for appellant Passamaquoddy Tribe

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Calais District Court docket number PC-2017-06
FOR CLERK REFERENCE ONLY