MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 24
Docket:        Cum-18-9; Cum-18-12
Argued:        October 11, 2018
Decided:       February 14, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ADOPTION OF RIAHLEIGH M.

*****

ADOPTION OF MYANNAH D.

SAUFLEY, C.J.

[¶1]  In the two appeals that we address in this consolidated opinion, we consider whether a parent whose parental rights are at stake in a judicial termination proceeding that does not involve the Department of Health and Human Services is constitutionally entitled to the services that are ordinarily provided in a title 22 child protection action after a court has found abuse or neglect or has placed a child in foster care under the supervision of the Department.  In the matters before us, the fathers of half-sisters Riahleigh M. and MyAnnah D. appeal from separate judgments of the Cumberland County Probate Court (*Mazziotti, J.*) granting the petitions of the children's maternal grandmother to terminate the fathers' parental rights as part of the proceeding through which the grandmother seeks to adopt the children.

[¶2]  During the separate proceedings in these actions, the court denied each father's motion for an order requiring the provision of rehabilitation and reunification services.[1]  Before us, the fathers argue that they were deprived of due process and equal protection of the law when the court denied these motions.  We conclude that the court did not violate the rights secured to the fathers by the Maine and federal constitutions, and that the court did not err or abuse its discretion by entering the judgments terminating the fathers' parental rights.  Accordingly, we affirm the judgments.

## I.  BACKGROUND

[¶3]  The following facts are drawn from the procedural record and from the court's findings, which are supported by the evidence.  *See In re Evelyn A.*, 2017 ME 182, ¶ 4, 169 A.3d 914.

[¶4]  Riahleigh was born in 2006, and MyAnnah was born in 2012.  The children have the same mother but different fathers.  The children now reside in the safe and healthy home of their maternal grandmother.  A District Court parental rights and responsibilities order regarding Riahleigh and a Probate Court guardianship order regarding MyAnnah placed the children in the

---

[1]  The fathers did not identify the intended or expected source of funding for any services in their motions.  The sources of those funds, however, are not material to our conclusion that the fathers are not entitled to the services as a constitutional matter.

grandmother's care. In early 2015, the grandmother filed petitions in the Probate Court to adopt the two children and petitions to terminate each parent's parental rights.[2] The court appointed counsel for the mother and each father. *See* 18-A M.R.S. § 9-106(a) (2017).[3] It also appointed a guardian ad litem in each matter. *See* 18-A M.R.S. § 9-204(c) (2017).

[¶5] The mother and both fathers unsuccessfully moved for the court to order the provision of rehabilitation and reunification services consistent with the services that would have been available if a court had found abuse or neglect or the children had been placed in foster care in a child protection matter. *Cf.* 22 M.R.S. §§ 4036-B, 4041 (2017). Neither of the fathers specified in his motion what specific services he wanted to receive, apart from a generic request by the father of MyAnnah that services include "visitation, parenting counseling, and mental health counseling." Neither motion requested payment for the services from any specific party or from the State, nor did either father

---

[2] From the record before us, it appears that at the time the grandmother filed the petitions to adopt the children and to terminate the parents' parental rights, the mother and both fathers objected to the adoptions. *See* 18-A M.R.S. §§ 9-301, 9-302 (2017).

[3] The entire title 18-A Probate Code has been repealed and replaced with a new Probate Code to be codified in new title 18-C, a change that will take effect on July 1, 2019. *See* P.L. 2017, ch. 402. All citations herein are to the Code currently in effect.

4

argue that any specific services were designed to remedy particular parenting deficits.

[¶6] The court scheduled separate trials on the two termination petitions, but before either trial was held, the mother consented to the termination of her parental rights to both children to enable the grandmother to adopt the children. The trials were therefore limited to the question of whether the fathers' parental rights should be terminated.

[¶7] After each trial, the court entered a judgment[4] terminating that father's parental rights upon finding that the father was unwilling or unable to protect his child from jeopardy and that these circumstances were unlikely to change within a time reasonably calculated to meet her needs, that he was unwilling or unable to take responsibility for his child within a time reasonably calculated to meet her needs, and that termination of the father's parental rights was in his child's best interest. *See* 22 M.R.S. § 4055(1)(A)(2), (B)(2)(a), (b)(i)-(ii) (2017). Each father timely appealed, and we invited amicus briefs on the constitutional issues raised by the fathers in their briefs. We now consider both appeals.

---

[4] The process consumed almost three years of the childrens' lives. From a petition filed in February 2015, judgments were entered in December 2017.

## II. DISCUSSION

[¶8]   In this opinion, we first summarize the statutory basis for the Department's obligation to provide rehabilitation and reunification services to parents in title 22 child protection matters.   We then address the fathers' arguments that the Due Process and Equal Protection Clauses of the federal and state constitutions require that parents be provided with similar services by court order in private adoption matters in which petitions to terminate parental rights have been filed.   Finally, we review the court's findings and discretionary determinations in support of the termination judgments.

A.      Statutory Obligation to Provide Rehabilitation and Reunification Services

[¶9]   The Department's obligation to provide rehabilitation and reunification services is triggered in a title 22 child protection matter when a parent is found to have subjected a child to abuse or neglect or a child has been removed from the home for sixty days.   22 M.R.S. § 4041(1-A).   In those circumstances, the Department is ordinarily[5] required to formulate a rehabilitation and reunification plan that includes the following:

---

[5]   The court may relieve the Department of the requirement to create a rehabilitation and reunification plan "if the court finds at least one of the following: (1) The existence of an aggravating factor; or (2) That continuation of reunification efforts is inconsistent with the permanency plan for the child."  22 M.R.S. § 4041(2)(A-2) (2017).

**(iv)** Services that must be provided or made available to assist the parent in rehabilitating and reunifying with the child, as appropriate to the child and family, including, but not limited to, reasonable transportation for the parent for visits and services, child care, housing assistance, assistance with transportation to and from required services and other services that support reunification; [and]

**(v)** A schedule of and conditions for visits between the child and the parent designed to provide the parent and child time together in settings that provide as positive a parent-child interaction as can practicably be achieved while ensuring the emotional and physical well-being of the child when visits are not detrimental to the child's best interests.

22 M.R.S. § 4041(1-A)(A)(1)(c).[6]

[¶10]  It is the parent, however, who ultimately bears the responsibility to rehabilitate and reunify with the child.  *See* 22 M.R.S. § 4041(1-A)(B).  The parental responsibilities identified in that statute require the parent to "[r]ectify and resolve problems that prevent the return of the child to the home," to "[s]eek and utilize appropriate services to assist in rehabilitating and reunifying with the child," and to "[p]ay reasonable sums toward the support of

---

[6]  We have made clear, however, that any failure by the Department to meet its statutory duty to provide rehabilitation and reunification services is not necessarily fatal to a termination petition.  *See In re Child of Heather W.*, 2018 ME 31, ¶ 11, 180 A.3d 661.  Rather, the ultimate question presented to the court on a title 22 termination petition is whether the Department has proved, by clear and convincing evidence, that the parent is unfit and that termination is in the child's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2) (2017).

the child within the limits of the parent's ability to pay." *Id.* § 4041(1-A)(B)(1), (5), (6).

[¶11] Thus, the parent has the obligation to remedy the parenting deficits that resulted in the removal or the finding of abuse or neglect, and the Department bears a responsibility to "make reasonable efforts to rehabilitate and reunify the family," including by making services available to the family. 22 M.R.S. § 4036-B(4); *see also id.* § 4041(1-A)(A), (B).

[¶12] In the absence of a judicial finding of abuse or neglect or removal from the home, however, the Department does not bear the same statutory responsibilities. When a dispute exists between or among private parties in a family matter, including in an adoption proceeding, neither the Department nor any of the other parties has a statutorily created obligation to provide or participate in rehabilitation and reunification services for a parent whose rights are at stake. *Adoption of Isabelle T.*, 2017 ME 220, ¶ 12, 175 A.3d 639. As we have observed, the Adoption Act, 18-A M.R.S. §§ 9-101 to 9-404 (2017), "does not require—or even authorize—the court to consider rehabilitation or reunification efforts prior to terminating parental rights" in private adoption proceedings. *Adoption of Isabelle T.*, 2017 ME 220, ¶ 12, 175 A.3d 639; *see also Adoption of L.E.*, 2012 ME 127, ¶ 13, 56 A.3d 1234 ("During an adoption

proceeding, the Probate Court is not required to order attempts at reunification before terminating parental rights.").[7] "There is no state assertion of parental unfitness in private termination/adoption proceedings, and the Adoption Act provides fewer protections for parents than those provided in Title 22 child protection proceedings." *Adoption of Isabelle T.*, 2017 ME 220, ¶ 11, 175 A.3d 639; *see* 22 M.R.S. §§ 4001-4068 (2017).

[¶13] Thus, as a *statutory* matter, in private family matter proceedings, a parent may have his or her parental rights restricted or terminated even in the absence of services that would be aimed at rehabilitating that parent. *See Adoption of Isabelle T.*, 2017 ME 220, ¶ 14, 175 A.3d 639. Although such a "rehabilitation and reunification plan is the centerpiece of child protective proceedings following a jeopardy determination," a plan is not implicated when there has been no removal or finding of abuse or neglect. *In re Thomas D.*, 2004 ME 104, ¶ 26, 854 A.2d 195; *see* 18-A M.R.S. § 9-204(b); *see also* 22 M.R.S. §§ 4003(3), 4035, 4036-B(4), 4041(1-A).[8]

---

[7] In particular, although the Adoption Act incorporates some provisions of the title 22 child protection process, *see* 18-A M.R.S. § 9-204(b) (2017), the incorporated process does not include the Department's statutory responsibility to provide the opportunity for rehabilitation and reunification as in child protection matters. *See* 22 M.R.S. § 4041(1-A) (2017) (requiring rehabilitation and reunification services in a child protection matter).

[8] Title 22 M.R.S. § 4003(3) was amended effective December 13, 2018, though not in any way that affects our opinion. *See* P.L. 2017, ch. 470, § 1 (to be codified at 22 M.R.S. § 4003(3)).

[¶14] The question raised here is whether, to safeguard a parent's fundamental rights, the Maine and federal *constitutions* require courts to order services for improving parental capacity when a termination petition has been filed in a private adoption matter to which the Department is not a party.[9]

B.    Constitutional Issues

    1.    Due Process

[¶15] There is no dispute that due process is required when termination of parental rights is sought by a private party ancillary to an adoption proceeding. *See Adoption of Isabelle T.*, 2017 ME 220, ¶¶ 4, 5, 175 A.3d 639; *see also* U.S. Const. amend. XIV, § 1;[10] Me. Const. art. I, § 6-A;[11] *In re D.P.*, 2013 ME 40, ¶ 10 n.4, 65 A.3d 1216 ("[T]he protections afforded by due process . . . under

---

[9] It is significant that neither of the fathers' motions for services indicated in a meaningful way what services he wanted the court to provide. Although the father of MyAnnah D. generically requested "visitation, parenting counseling, and mental health counseling," he did not explain how any specified services would address parenting deficits, and he did not request supervised visitation services. Therefore, when the court acted on the motions, it was given little or no information on the record about the type of rehabilitative and reunification efforts either father was interested in pursuing through the court's auspices. Later in the proceedings, however—well after the court had denied the motions—each father did articulate that he sought supervised visitation with his child. MyAnnah's father said so only when he testified during the termination hearing itself, and Riahleigh's father told us at oral argument, also suggesting that the request had been communicated in a conference with the court.

[10] The Federal Constitution provides, "[N]or shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[11] The Maine Constitution provides, "No person shall be deprived of life, liberty or property without due process of the law, nor be denied the equal protection of the laws . . . ." Me. Const. art. I, § 6-A.

the United States and Maine constitutions are coextensive.").  The assurance of due process is "'meant to protect persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property.'" *Guardianship of Chamberlain*, 2015 ME 76, ¶ 17, 118 A.3d 229 (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)).

[¶16]  Because a parent "has a fundamental liberty interest in the care, custody, and control of his [or her] child," the parent is entitled to constitutional protection of that interest—meaning that "[t]he government may interfere with th[e] familial relationship only through procedures that satisfy the rigors of the Due Process Clause." *Guardianship of Thayer*, 2016 ME 52, ¶ 22, 136 A.3d 349.  Thus, "fundamentally fair procedures [must] provide an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." *In re C.P.*, 2016 ME 18, ¶ 17, 132 A.3d 174 (quotation marks omitted); *see also Adoption of J.S.S.*, 2010 ME 74, ¶ 12, 2 A.3d 281.

[¶17]  To determine whether the process employed satisfied the constitutional requirements of due process, we consider three familiar factors:

- "First, the private interest that will be affected by the official action";

- Next, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and

- Finally, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.  We now apply those factors to the cases at bar.

a.    Private Interest

[¶18]  As to the first of the due process factors, the private interest at stake is each father's constitutionally protected interest in his parental relationship with his child.  *See Mathews*, 424 U.S. at 335; *Guardianship of Thayer*, 2016 ME 52, ¶ 22, 136 A.3d 349.  This fundamental liberty interest of parents "to make decisions concerning the care, custody, and control of their children" is firmly established.  *Rideout v. Riendeau*, 2000 ME 198, ¶ 18, 761 A.2d 291 (quotation marks omitted).

b.    Risk of Erroneous Deprivation Using Existing Process

[¶19]  As to the second factor, we examine the process that in fact was provided to the fathers and the additional process that they claim is owed to them to evaluate the risk of erroneous deprivation of parental rights through

12

the process employed. *See Mathews*, 424 U.S. at 335; *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.

[¶20] The fathers do not contest that they received due process with respect to their notice and opportunity to be heard, and the opportunity to participate fully in the hearing, including the right to cross-examine witnesses and present their own evidence. *See* 18-A M.R.S. § 9-204(b); 22 M.R.S. §§ 4053, 4054, 4055 (2017).[12] The fathers also received the benefit of counsel, appointed by the court and paid for, at least in part, by Cumberland County.[13] In addition, the children received the benefit of the appointment of a guardian ad litem to investigate and provide recommendations to the court. *See* 18-A M.R.S. § 9-204(c). Beyond those procedures, however, the fathers argue that they were entitled to rehabilitation and reunification services that might have been provided to them if the court had entered an applicable order in a title 22 child protection proceeding. *Cf.* 22 M.R.S. § 4041.

[¶21] Applying the second *Mathews* factor to the facts and procedure of the two cases before us, we conclude that there is little risk of an erroneous

---

[12] Section 4055 has been amended, effective July 1, 2019, to update references to the new title 18-C Probate Code, which also becomes effective on July 1, 2019. *See* P.L. 2017, ch. 402, §§ C-69, F-1.

[13] Each father applied for court-appointed counsel, and the court approved their respective applications. *See* 18-A M.R.S. § 9-106(a) (2017). We need not determine here whether the appointment of counsel is constitutionally required in private adoption proceedings.

deprivation of the fathers' fundamental right to parent through the existing procedure and little utility in the additional process urged by the fathers, namely, the court-ordered provision of rehabilitation and reunification services in the context of a private family proceeding. *See Mathews*, 424 U.S. at 335; *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222. In neither of the cases before us did the court find that the father had failed to make a good faith effort to rehabilitate and reunify—a form of parental unfitness that is explicitly connected to the Department's obligation to assist a parent pursuant to 22 M.R.S. §§ 4041. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(iv). Instead, the court addressed other bases for finding unfitness that are independently sufficient to support termination. *Cf. In re Children of Melissa F.*, 2018 ME 110, ¶ 9, 191 A.3d 348 (requiring proof of "at least one of the four statutory grounds of parental unfitness" (quotation marks omitted)).

[¶22] This is not a case in which the Department had any responsibility for the children. *See* 22 M.R.S. § 4041(1-A) (2017); *see also* 22 M.R.S. §§ 4002(1), 4032(1). Rather, as is happening in so many families, the children's grandmother took responsibility for the children pursuant to judgments entered in family and guardianship proceedings in which the Department was not a party or participant.

14

[¶23]   Further, in each of the prior court proceedings affecting the children, the courts provided each father an appropriate and adequate opportunity to have sought rights of contact before the petitions to terminate parental rights were filed.[14]  As to Riahleigh, in a District Court family matter, Riahleigh's father did not appear at the hearing at which the grandmother gained the right to provide the primary residence of his child.  In that judgment, the court awarded the father the right of supervised contact but conditioned that right on a requirement that the father complete a batterer intervention program.  Riahleigh's father admits that he failed to satisfy that requirement.[15]  Regarding MyAnnah, the maternal grandmother had been granted a guardianship in a Probate Court proceeding, but, despite having received notice of that proceeding, MyAnnah's father failed to participate in that action to assert any of his parental rights.  In an amended guardianship order entered in September 2014, the court conditioned the father's contact with MyAnnah on

---

[14]  As we have noted, supervised visitation is the only type of service each father now claims to seek, although the record does not show that they provided the court with that information before the court acted on their motion for court-provided services. *See supra* n.9.

[15]  The judgment also conditioned supervised visitation on approval by the grandmother.  The father's failure to fulfill the condition that he complete a batterer intervention program—a requirement fully within his power to fulfill—makes the question of whether the grandmother would have allowed visitation irrelevant.

his completion of a batterer intervention program,[16] and there is no evidence that he satisfied that requirement after the entry of the order.[17] Therefore, through their own choices, the fathers themselves foreclosed the opportunity to participate in the type of service that they then asked the court to provide in these private adoption matters.

[¶24] More fundamentally, each father had the opportunity to seek out and engage in most types of appropriate services on his own initiative and then present evidence of any resulting rehabilitation as it bears on the issue of parental fitness. *See Adoption of J.S.S.*, 2010 ME 74, ¶ 12, 2 A.3d 281. The trial record showed, however, that neither father paid the ordered amount of child support, and—most significantly—neither completed any treatment or work to become capable of parenting without violence.[18]

---

[16] The judgment also conditioned supervised visitation on the grandmother's approval.

[17] The father of MyAnnah did present evidence that, while incarcerated, he attended a 48-class program sometime before July 2014 that addressed issues of domestic violence.

[18] There is no evidence that MyAnnah's father sought out a professional supervisor for any proposed child visits. Each father could have, but did not, complete a batterer intervention program to satisfy the court-ordered condition to any contact he could have with his child. Each father remained inattentive to his child's needs after engaging in violent acts against the mother—one father's violence causing the mother to seek medical care and resulting in trauma to Riahleigh, and the other father's violence having been inflicted during and after the mother's pregnancy with MyAnnah. In short, both fathers could have taken steps to be better able to challenge the grandmother's assertion that they are parentally unfit, but neither of them did so.

[¶25]   Ultimately, in these private termination proceedings, all of the procedural safeguards were in place to provide the fathers with notice of the proceedings that would have consequences for their parental rights, an opportunity to be heard regarding their ability to parent the children, an opportunity to seek contact with the children, and an opportunity to present themselves as safe resources for the children.   Considering the extensive process available to the fathers in the private proceedings, "the probable value . . . of additional or substitute procedural safeguards" in the form of court-ordered rehabilitation and reunification services is minimal.  *Mathews*, 424 U.S. at 335; *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.  Each father had the opportunity to develop the skills to provide parental care and support free from violence and to present the resulting evidence at trial.  Despite having opportunities to rehabilitate and to present evidence and be heard, each father failed to participate in the court processes available to him to assert his parental rights.  Therefore, the second *Mathews* factor does not support the fathers' assertions that they were deprived of due process.  *See Mathews*, 424 U.S. at 335; *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.

c.      The Effect on the State of Additional Process

[¶26]  With respect to the third *Mathews* consideration, the state "has a well-established *parens patriae* interest in the safety and well-being of the children within its jurisdiction." *In re Children of Mary J.*, 2019 ME 2, ¶ 16, --- A.3d ---.  In the circumstances of these cases, given the needs of the children to have a permanent home, and given the significant fiscal and administrative burdens that additional procedures sought by the fathers would certainly entail, no additional process is required.  *See Mathews*, 424 U.S. at 335; *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.  The limited resources of the State are, by statute, focused on those cases in which Departmental services are required, and given the procedural opportunities already made available through the judicial process in the private family and probate proceedings, additional time-consuming services—possibly at the state's expense—are not required as a matter of due process.

[¶27]  In summary, the court was not constitutionally required by the Due Process Clause to order the provision of any particular services in the private adoption proceeding.  *See In re Baby Boy H.*, 73 Cal. Rptr. 2d 793, 797

18

(Cal. Ct. App. 1998) (holding that reunification services are a benefit to which there is no constitutional entitlement under due process principles).[19]

### 2. Equal Protection

[¶28]  The next question is whether, in these title 18-A proceedings, the fathers were deprived of equal protection of the laws by the court's orders denying their motions to be provided with rehabilitation and reunification services that might be available in a title 22 proceeding.  *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.  "The Fourteenth Amendment's Equal Protection Clause prohibits any state from denying to any person within its jurisdiction the equal protection of the laws, and requires, generally, that persons similarly situated be treated alike.  Article [I], section 6-A of the Maine Constitution includes similar requirements."  *Doe v. Williams*, 2013 ME 24, ¶ 53, 61 A.3d 718 (alteration in original) (quotation marks omitted); *see Town of Frye Island v. State*, 2008 ME 27, ¶ 14, 940 A.2d 1065 (holding that the protections under the federal and state constitutions are coextensive).

[¶29]  Individuals who are *similarly situated* are those "who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  If individuals

---

[19]  The California Supreme Court cited this case with approval in *In re Nolan W.*, 203 P.3d 454, 460 (Cal. 2009).

are similarly situated, we "must . . . determine what level of scrutiny to apply." *Town of Frye Island*, 2008 ME 27, ¶ 14, 940 A.2d 1065. Where a suspect classification or fundamental right is at issue, the state action must satisfy strict scrutiny, which requires that the action be "narrowly tailored to achieve a compelling governmental interest." *Anderson v. Town of Durham*, 2006 ME 39, ¶ 29, 895 A.2d 944, *cert. denied*, 549 U.S. 1051 (2006). Because it is well established "that parents have a fundamental liberty interest 'to make decisions concerning the care, custody, and control of their children,'" we will strictly scrutinize the difference in treatment if the fathers here are similarly situated to parents to whom the Department provides reunification and rehabilitative services in title 22 child protection cases. *Rideout*, 2000 ME 198, ¶ 18, 761 A.2d 291 (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). Accordingly, we focus on whether, for purposes of receiving rehabilitation and reunification services, the fathers here are similarly situated with parents whose children have been found to have been subjected to abuse or neglect or have been removed from their parents' care and placed in foster care by court order.

[¶30] We have rejected equal protection challenges to the denial of services and other processes that are prescribed in certain circumstances affecting parental rights but not in others. We concluded, for example, that a

mother's equal protection rights were not violated when she was denied the opportunity to petition to terminate her own parental rights in a title 22 action, in an effort to avoid the prospect of a judicial determination that she had created circumstances of jeopardy to the child, even though a parent may cede her parental rights as part of a title 18-A adoption proceeding. *In re D.P.*, 2013 ME 40, ¶¶ 10, 17, 65 A.3d 1216. We concluded that the mother was not similarly situated with "a parent who surrenders and releases all parental rights in an adoption proceeding" because, unlike the situation of a parent whose child is the subject of an adoption petition, the Department had filed petitions for a preliminary protection order and child protection order alleging that the mother "placed her child at risk of harm" pursuant to 22 M.R.S. §§ 4032 and 4034. *In re D.P.*, 2013 ME 40, ¶ 17, 65 A.3d 1216. Consequently, we concluded that the mother had failed to establish that she had been denied equal protection of the law. *Id.*

[¶31] We also considered a parent's assertion that, to be provided equal protection of the laws, she should have a right to appeal a court's order appointing a permanency guardian in a title 22 child protection matter because guardianship orders could be appealed in other types of proceedings. *In re*

*Dustin C.*, 2008 ME 89, ¶¶ 1, 5, 952 A.2d 993.  Addressing the equal protection

argument, we concluded that the

> appointment of a permanency guardian is . . . embedded in an
> overall statutory framework *quite different and apart* from
> guardianship pursuant to 18-A M.R.S. § 5-204 or residence and
> visitation pursuant to 19-A M.R.S. § 1653(2), and the mother is not
> similarly situated with parents seeking to appeal an adverse ruling
> pursuant to [those statutes] within the meaning of the Equal
> Protection Clause.

*Id.* ¶ 8 (emphasis added).

[¶32]  Consistent with our reasoning in those cases, we conclude that the

situation of a parent whose child has, as here, been residing with another

person based on an order in a family matter or guardianship proceeding is

substantively different from the situation of a parent in a child protection

matter.  *See* 22 M.R.S. § 4041(1-A); *cf. In re D.P.*, 2013 ME 40, ¶ 17, 65 A.3d 1216

(concluding that a parent who "faces allegations that [he or] she placed [his or]

her child at risk of harm in a proceeding brought by the State" is not "similarly

situated to a parent who surrenders and releases all parental rights in an

adoption proceeding").

[¶33]  Although parents in child protection and adoption matters may be

similarly situated to the extent that they are defending against petitions for the

termination of their parental rights, those parties are not similarly situated

with respect to the events preceding the petition to terminate parental rights. If a title 22 rehabilitation and reunification plan is ordered by the court, the court will have already found abuse or neglect, or ordered the child removed from the parent's care. *See* 22 M.R.S. § 4041(1-A). It is the finding of abuse or neglect or the removal of the child from the home—not the filing of a termination petition—that triggers the application of section 4041(1-A).

[¶34] The purpose of rehabilitation and reunification services ordered in a title 22 matter is to restore an intact family after a specified government actor or three private individuals have petitioned for, and proved the necessity of, a protection order. *See* 22 M.R.S. §§ 4032, 4034, 4035. The goal is for the parent to ameliorate the identified abusive or neglectful conduct. *See* 22 M.R.S. §§ 4003(3), 4041(1-A).

[¶35] In contrast, when a title 18-A termination proceeding is commenced in conjunction with an adoption petition without a preceding finding of abuse or neglect or the removal of a child from the home, the state has not intervened in an intact family to protect a child from abuse or neglect. *See id.* § 4041(1-A). The petitions now before us provide a perfect example of that; although a family judgment and a guardianship judgment were entered and contained findings regarding the fathers, neither of those judgments found

abuse or neglect or ordered a child into foster care pursuant to title 22. The Department has not, therefore, brought to bear the authority of the state to protect the child from abuse or neglect. Absent such executive branch interference with the parent-child relationship, the parents in a private adoption matter are not similarly situated with parents whose children have been the subject of a child protection order.

[¶36] Our reasoning is consistent with that of the Court of Appeals of Washington, which held that a parent in an adoption matter whose fitness had not previously been questioned was not similarly situated with a parent in a dependency (i.e., child protection) matter for purposes of rehabilitation and reunification services. *In re Interest of Skinner*, 982 P.2d 670, 676 (Wash. Ct. App. 1999). That court reached its conclusion based largely on the differing purposes of the statutes and the extent of the state's interference with parental rights in dependency cases in which rehabilitation and reunification services may be required. *See id.*; *see also People ex rel. T.D.*, 140 P.3d 205, 216-17 (Colo. App. 2006) (holding that a parent in a neglect proceeding who was subject to an expedited appellate process was not similarly situated with a parent in an adoption proceeding); *cf. In the Interest of Phillips*, 806 A.2d 616, 619 (Del. Fam. Ct. 2002) (stating, in analyzing a separation of powers argument, that "[t]he

24

entitlement to reunification services is a statutory one and does not evolve from a constitutional right").

[¶37] Because the fathers are not similarly situated with parents whose children have been the subject of a child protection order, the court did not violate the fathers' equal protection rights by denying their motions to be provided with court-ordered services. *See Williams*, 2013 ME 24, ¶ 53, 61 A.3d 718.

C.    Sufficiency of the Evidence

[¶38] The fathers also challenge the court's findings on the ground that those findings might have been different if the court had ordered the provision of rehabilitation and reunification services. Because we have concluded that the fathers were not entitled to those services, we are not persuaded by their arguments, and we address only whether the court erred or abused its discretion in terminating their parental rights based on the existing record.

[¶39] The burden of proof in a contested termination proceeding arising in the course of an adoption rests with the person seeking to adopt the child. *See* 18-A M.R.S. § 9-204(b); 22 M.R.S. § 4055(1)(A)(2), (B)(2); *Adoption of L.E.*, 2012 ME 127, ¶ 11, 56 A.3d 1234. Where, as here, there has been little or no relatively recent contact between the legal parent and the child, it may be

difficult for an adoption petitioner to obtain and provide direct evidence of the parent's current parental unfitness. Nonetheless, in the matter before us, we conclude that the court had sufficient evidence available to support its determination.

[¶40] On the existing record, the court did not err in finding that each father is unable or unwilling to protect his child from jeopardy and that those circumstances were unlikely to change within a time that is reasonably calculated to meet his child's needs, and that he is unable or unwilling to take responsibility for his child within a time that is reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297; *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. Specifically, as to Riahleigh, the court found, with evidentiary support, that the father was abusive toward the mother in Riahleigh's presence, resulting in trauma to the child; the father has an extensive history of criminal convictions and violent acts; he failed to address and remediate his violent behavior; and he failed to pay the court-ordered amount of child support even after obtaining employment. As to MyAnnah, the court found, with supporting evidence, that the father perpetrated domestic violence against the mother; disregarded the child's well-being, leading to a serious medical condition that went untreated

for months; failed to provide care and support for the child throughout her life; and failed to take responsibility for his past actions.

[¶41] Nor did the court err in considering the fathers' earlier conduct in finding parental unfitness. *See In re Paige L.*, 2017 ME 97, ¶ 31, 162 A.3d 217 ("[W]hat is past is often prologue regarding the threat of serious harm posed by the parent . . . ." (quotation marks omitted)); *In re M.E.*, 2016 ME 1, ¶¶ 1, 3, 11, 131 A.3d 898 (concluding that a parent's failure to acknowledge past behavior supported a finding that the parent was unable or unwilling to protect the child from jeopardy); *In re C.P.*, 2013 ME 57, ¶¶ 7, 10, 67 A.3d 558 (same). Notwithstanding the evidence offered by each father in support of his current capacity to parent and support his child, the determination of the weight and credibility of the evidence in its totality was well within the province of the court as fact-finder. *See In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105*.*

[¶42] On this record, the court did not err or abuse its discretion in finding parental unfitness and determining that termination was in each child's best interest. *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297; *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

## III. CONCLUSION

[¶43]  The court committed no constitutional error in its orders denying the fathers' motions for orders of rehabilitation and reunification services, nor did it err or abuse its discretion in determining that each father's parental rights should be terminated.  Accordingly, we affirm the judgments.

The entry is:

Judgments affirmed.

---

Michael G. Keefe, Esq. (orally), Portland, for appellant father of Riahleigh M.

John F. Zink, Esq. (orally), Freeport, for appellant father of MyAnnah D.

Timothy E. Robbins, Esq. (orally), South Portland, for appellee maternal grandmother

Christopher Berry, Esq., Bridgton, for Amicus Curiae, The American Academy of Adoption & Assisted Reproduction Attorneys

Cumberland County Probate Court docket numbers A-2015-23 and A-2015-24
FOR CLERK REFERENCE ONLY