MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 13
Docket:      Pen-20-190
Argued:      February 11, 2021
Decided:     March 23, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

JOHN P. MOYANT

v.

REGINA PETIT et al.

JABAR, J.

[¶1] John P. Moyant appeals from the judgment dismissing his complaint for lack of subject matter jurisdiction entered by the Superior Court (Penobscot County, *A. Murray, J.*). *See* M.R. Civ. P. 12(b). On appeal, Moyant argues that the court erred in determining that his dispute with Regina Petit and the Passamaquoddy Tribe was an "internal tribal matter." We disagree and we affirm the court's judgment.

## I. BACKGROUND

A.    Factual Background

[¶2] The following facts were found by the Superior Court and are taken from the pleadings and from "material outside the pleadings submitted by the pleader and the movant." *Davric Me. Corp. v. Bangor Historic Track, Inc.*, 2000

2

ME 102, ¶ 6, 751 A.2d 1024 (quotation marks omitted).  We make no favorable inference in favor of Moyant.  *Tomer v. Me. Hum. Rts. Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335 ("Whether subject matter jurisdiction exists is a question of law that we review de novo. . . . [W]e make no favorable inferences in favor of the plaintiff." (citations omitted)).

[¶3]  On November 1, 1983, Harry Fry, who is not a member of the Tribe, entered into a one-year "Campsite Lease" with the Tribe.  The camp was on Junior Lake, which is located on tribal land.[1]  In 2011, Fry transferred his lease to Regina Petit, a member of the Tribe, and stated that he had no future interest in the property.  In 2012, the Tribe formally approved this transfer.[2]  In 2015, Fry died.

[¶4]  John Moyant, a resident of Florida who is not a member of the Tribe, visited the property, made improvements to the property, and stored personal belongings at the property beginning while Fry was alive and continuing through June 2017.  At some point Petit told Moyant that he was not allowed back on the property.  In May 2017, Moyant wrote Petit a letter stating that he

---

[1] The lease names only Fry as the lessee and states, "Lessee shall not sublet, assign or transfer this Lease or give or surrender possession of the leased premises without the prior written consent of Lessor."

[2] In 1985, the Tribe passed a referendum that prohibited leasing of its tribal land to non-Indians.

would break into the camp if he was unable to get into the camp. In June 2017, Petit contacted the Chief of Police for the Passamaquoddy Tribe and caused Moyant to be served with a no-trespass notice.

B.    Procedural History

[¶5]  On February 8, 2019, Moyant filed a complaint in the Superior Court against Petit and the Tribe.[3]  Petit and the Tribe filed an answer alleging lack of subject matter jurisdiction because it was an "internal tribal matter," and for Moyant's failure to exhaust the tribal remedies.

[¶6]  On October 28, 2019, Petit and the Tribe filed a motion to dismiss the complaint for lack of subject matter jurisdiction, and filed affidavits and exhibits with the motion.  Petit and the Tribe argued that the action squarely implicates the "right to reside" on the land, which is enumerated as an example of an "internal tribal matter" in 30 M.R.S. § 6206(1) (2020).  They argued alternatively that even if this action does not implicate the "right to reside" on tribal land, application of the factors announced in *Akins v. Penobscot Nation*, 130 F.3d 482, 486-87 (1st Cir. 1997), would still lead to the conclusion that the

---

[3]  The complaint alleged four counts against both parties.  Count 1 alleged that Moyant "was the intended beneficiary of a lease entered into by mutual consent that [Petit and the Tribe] breached"; Count 2 alleged that Petit and the Tribe "intentionally misrepresented a material fact relating to the terms of termination of the lease"; Count 3 alleged that Petit and the Tribe "converted property of [Moyant] for their own use"; and Count 4 alleged that Moyant "conferred a benefit to [Petit and the Tribe]" for which he was not compensated.

4

action concerned "internal tribal matters." Additionally, Petit and the Tribe argued that if the court decided that the action did not concern an "internal tribal matter," then the tribal exhaustion doctrine would apply. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985). Moyant filed a response to the motion to dismiss and filed exhibits with the motions. Petit and the Tribe filed a reply with attached exhibits and affidavits.

[¶7] On February 20, 2020, the court held a hearing on the motion to dismiss, and on March 10, 2020, issued a written order granting Petit and the Tribe's motion to dismiss for lack of subject matter jurisdiction, stating that the dispute "does not fall squarely within any of the enumerated examples of an 'internal tribal matter' in section 6206(1)," but that it does involve an "internal tribal matter" under the *Akins* test. The court concluded that it was unnecessary to address the tribal exhaustion doctrine.[4] Moyant timely appealed. *See* M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2020).

---

[4] Moyant filed a motion to reconsider with attached exhibits and affidavits. Petit and the Tribe filed a reply to the motion, and Moyant filed a response to this reply. The court denied the motion, stating that the arguments and the "evidence" included in the motion were arguments that Moyant already made or could have previously presented to the court and, alternatively, that the arguments were not convincing. Moyant did not raise this issue on appeal, and therefore any objection to this decision is not preserved. *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue.").

## II. DISCUSSION

A. Standard of Review

[¶8] "We review de novo an issue of statutory interpretation and a dismissal for lack of jurisdiction." *Mutty v. Dep't of Corr.*, 2017 ME 7, ¶ 9, 153 A.3d 775; *see also Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 14, 770 A.2d 574 ("Statutory construction is a question of law, and we review the Superior Court's interpretation of the . . . Maine Implementing Act de novo.").

B. 30 M.R.S. § 6206(1)

[¶9] The Maine Indian Claims Settlement Act, Pub. L. No. 96-420, 94 Stat. 1785, and the Maine Indian Claims Settlement Implementing Act, 30 M.R.S. §§ 6201-6214 (2020), resulted from a settlement between the Passamaquoddy Tribe, the Penobscot Nation, and the State of Maine that, among other provisions, delineates areas of authority over Indian affairs. *Great N. Paper, Inc.*, 2001 ME 68, ¶¶ 18-41, 770 A.2d 574. Section 6206(1) of the Maine Implementing Act provides that if a dispute is an "internal tribal matter," then it is within the tribal court's jurisdiction. 30 M.R.S. § 6206(1).

[¶10] The statute does not provide a definition of "internal tribal matter," but does include a nonexhaustive list:

> membership in the respective tribe or nation, *the right to reside within the respective Indian territories*, tribal organization, tribal

> government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State.

*Id.* (emphasis added); *Francis v. Dana-Cummings*, 2008 ME 184, ¶ 13, 962 A.2d 944.[5]

[¶11]  We have reasoned that if a matter does not fit "squarely" within one of the statutory examples, then additional analysis is needed.  *Francis,* 2008 ME 184, ¶ 14, 962 A.2d 944.  Although this dispute would not have originated if Moyant had not asserted that he had a "right to reside" on Passamaquoddy land, the relief he is seeking is "a judgment for contractual, compensatory, equitable and punitive damages."  Therefore, we agree with the trial court that this matter does not fit squarely within the "right to reside" on tribal land or any of the other examples in section 6206(1)'s list because this case does not require the court to determine if Moyant may reside on the land.  *Id.* (holding that when claims involved the "right to possession or ownership of a residence on tribal land, they [did] not involve [the plaintiff's] right to reside within the Tribe's territory"); *In re Children of Mary J.*, 2019 ME 2, ¶¶ 11-13, 199 A.3d 231

---

[5] There are limits to this jurisdiction; for example, if the Tribe creates an entity pursuant to Maine state law, that business is not part of the Tribe as defined in the Implementing Act.  *See Francis v. Pleasant Point Passamaquoddy Hous. Auth.,* 1999 ME 164, ¶ 8, 740 A.2d 575.  Contrary to Moyant's assertions, however, this limitation is not applicable in this case.

(holding that when children were placed in a foster home outside the Tribe's territory, the lower court and the Department of Health and Human services were not "attempting to regulate who may or may not reside within an Indian territory"). We now determine whether the *Akins* factors apply to this dispute.

C.    *Akins* Factors

[¶12]  We have adopted the approach announced by the United States Court of Appeals for the First Circuit in *Akins* to determine if something is an "internal tribal matter" when a dispute does not fit squarely into section 6206(1)'s examples. *In re Children of Mary J.*, 2019 ME 2, ¶ 15, 199 A.3d 231; *Akins*, 130 F.3d at 486-87.  These factors, "which are nonexclusive and nondispositive, include: (1) the effect on nontribal members, (2) & (3) the subject matter of the dispute, particularly when related to Indian lands or the harvesting of natural resources on Indian lands, (4) the interest of the State of Maine, and (5) prior legal understandings." *In re Children of Mary J.*, 2019 ME 2, ¶ 15, 199 A.3d 231 (quotation marks omitted).

[¶13]  When the *Akins* factors are applied here, almost all of them support the determination that this dispute is an "internal tribal matter."  Although we agree with the court that Moyant's status as a nonmember of the Tribe weighs

8

slightly toward a holding that the dispute is not an "internal tribal matter," all other factors support the conclusion that it is an "internal tribal matter."

[¶14]   Tribal jurisdiction does not disappear simply because a person who is not a member of the Tribe is involved in a dispute, especially when the action is against the Tribe and a tribal member concerning tribal land.  It is difficult to conceive of a more appropriate forum for this case than the tribal court. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978) ("Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians."); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 (1987) ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty.").

[¶15]   The Superior Court did not err by determining that it lacked subject matter jurisdiction because the dispute was an "internal tribal matter."[6]

The entry is:

Judgment affirmed.

---

[6] We do not need to address the tribal exhaustion doctrine because we are affirming the court's decision to grant the motion to dismiss for lack of subject matter jurisdiction. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985).

Eric G. Woodbury, Esq. (orally), Bucksport, and Bronson Stephens, Esq., Bucksport, for appellant John P. Moyant

Kaighn Smith, Jr., Esq., and Michael-Corey F. Hinton, Esq. (orally), Drummond Woodsum, Portland, for appellees Regina Petit and the Passamaquoddy Tribe

Penobscot County Superior Court docket number CV-2019-21
FOR CLERK REFERENCE ONLY