2009 ME 10

**In re JACOB C.**

Supreme Judicial Court of Maine.

Argued: Jan. 14, 2009.
Decided: Feb. 3, 2009.

George A. Hess, Esq. (orally), Lewiston, ME, for mother.

Adam P. Sherman, Esq. (orally), Lewiston, ME, for father.

J. Lawrence Irwin, Esq., Auburn, ME, Guardian ad litem.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] The mother of Jacob C. appeals from a judgment of the District Court (Lewiston, *Beliveau, J.*) establishing parental rights and responsibilities. Specifically, the mother contends that the court erred in awarding sole parental rights and responsibilities and primary residence of her son to his father, and in ordering her visits to be supervised. The mother also argues that there was insufficient evidence to support the findings and decision of the court. The father contends that the mother has no right to appeal because the parental rights and responsibilities judgment was entered as part of a title 22 proceeding. We conclude that the mother has the right to appeal the parental rights and responsibilities judgment because it was issued pursuant to 19–A M.R.S. § 1653 (2008). The evidence, however, supports the trial court's decision, and we affirm the trial court's judgment.

## I. BACKGROUND

[¶ 2] Jacob was born on September 21, 2006. On the following day, the Department of Human Health and Services (DHHS) filed a petition for a child protec- tion order, alleging, among other things, that Jacob was at risk of serious harm due to his mother's mental health issues.[1] In February 2007, the District Court issued a jeopardy order as to the mother, finding that her mental health issues impeded her ability to assume primary care for Jacob and created a threat of serious harm to him.[2] Jacob was placed in the custody of DHHS.

[¶ 3] A jeopardy hearing regarding only Jacob's father was conducted in May 2007. The court found that the only jeopardy presented by the father was his inability "to adequately legally protect the child from the mother in the absence of a Child Protective Order while the parent(s) pursue an appropriate family matter/parental rights and responsibilities order." Jacob remained in the custody of DHHS, but DHHS anticipated and agreed to a trial placement of Jacob with his father.

[¶ 4] In June 2007, after judicial review of the child protection order, the court found that the mother's mental health issues persisted and jeopardy had not been alleviated. The court placed Jacob with his father, after finding that Jacob had done well during the trial placement. Although Jacob was living with his father, DHHS retained legal custody of Jacob.

[¶ 5] In January 2008, another judicial review of the child protective order occurred. In its order, the court noted that in September 2007, Jacob's father had filed a complaint seeking an order establishing parental rights and responsibilities.[3] A

---

1. Shortly after Jacob's birth, his mother was involuntarily admitted to Acadia Hospital for evaluation. The hospital records show that the mother had a history of bipolar disorder, and describe her as being prone to psychosis, paranoia, and violence. She is also described as disorganized and uncooperative.

2. We affirmed this jeopardy order on December 11, 2007. Mem 07–204 (December 11, 2007).

3. The father filed a motion to consolidate his complaint with the child protective case but withdrew the motion in January 2008.

hearing concerning the issue of parental rights and responsibilities as authorized under 22 M.R.S. § 4036(1–A) (2008)[4] was ordered.

[¶ 6] On March 7, 2008, the court held the hearing. The court found that the mother's serious mental health issues continued to interfere with her ability to provide primary care to Jacob, and concluded that the mother had not alleviated the jeopardy threat to her son. The court also found that Jacob had been doing well in the primary care of his father, and that Jacob's placement with his father had been successful. Based on these findings, the court awarded the father sole parental rights and responsibilities of Jacob. The court also ordered that Jacob's primary residence would be with his father and that his visits with his mother would be supervised.

## II. DISCUSSION

### A. Titles 22 and 19–A

[¶ 7] The court entered its parental rights and responsibilities order as part of 22 M.R.S. § 4036(1–A). Title 22 M.R.S. § 4036(1–A) falls within the subchapter on child protection orders, and states in part:

> 4. **1–A. Parental rights and responsibilities orders.** Upon request of a parent, the court may enter an order pursuant to Title 19–A, section 1653 if the court determines that the order will protect the child from jeopardy and is in the child's best interest as defined in Title 19–A, section 1653, subsection 3. If the court enters an order pursuant to this subsection:
>
> A. The order has the same force and effect as other orders entered pursuant to Title 19–A, section 1653;
> B. The order is subject to modification or termination in the same manner as other orders entered pursuant to Title 19–A, section 1653;
> C. Any person who requests a modification or termination of the order must serve the department with the motion or petition;

**1–A. Parental rights and responsibilities orders.** Upon request of a parent, the court may enter an order pursuant to Title 19–A, section 1653 if the court determines that the order will protect the child from jeopardy and is in the child's best interest as defined in Title 19–A, section 1653, subsection 3. If the court enters an order pursuant to this subsection:

A. The order has the same force and effect as other orders entered pursuant to Title 19–A, section 1653;

B. The order is subject to modification or termination in the same manner as other orders entered pursuant to Title 19–A, section 1653;

C. Any person who requests a modification or termination of the order must serve the department with the motion or petition.

22 M.R.S. § 4036(1–A)(A)–(C).

[¶ 8] The provision of title 22 that addresses appeals, 22 M.R.S. § 4006 (2008), states in part, "Orders entered under [the Child and Family Services and Child Protection Act] under sections other than section 4035, 4054 or 4071 are interlocutory

> D. The department is not a party to proceedings to modify or terminate the order unless otherwise ordered by the court. This paragraph may not be construed to limit the department's ability to request a judicial review pursuant to section 4038, subsection 2;
> E. Notwithstanding section 4038, the court may order that further judicial reviews may not be held unless requested by a party and, notwithstanding section 4038–B, may order that further permanency planning hearings may not be held; and
> F. The court may terminate the appointments of the guardian ad litem and attorneys for parents and guardians, in which case the attorneys and guardian ad litem have no further responsibilities to their clients or the court.
>
> 22 M.R.S. § 4036(1–A) (2008).

and are not appealable." The father argues that because the court's order was issued as part of 22 M.R.S. § 4036, a section not included in 22 M.R.S. § 4006, the court's judgment cannot be appealed.

[¶ 9] The interpretation of a statute is reviewed de novo as a question of law. *H.D. Goodall Hosp. v. Dep't of Health & Human Servs.*, 2008 ME 105, ¶ 9, 951 A.2d 828, 830. When a statute is not ambiguous, its plain meaning will govern. *See City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180. Statutes are interpreted "to avoid absurd, illogical, or inconsistent results." *Dombkowski v. Ferland*, 2006 ME 24, ¶ 22, 893 A.2d 599, 604 (quotation marks omitted). We "consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 12, 926 A.2d 1197, 1201 (quotation marks omitted).

[¶ 10] We have not yet addressed how 22 M.R.S. § 4006 affects parental rights and responsibilities judgments issued as part of a child protective order under 22 M.R.S. § 4036(1–A). We have, however, commented on the applicability of section 4006 to other sections of the Child and Family Services and Child Protection Act.

[¶ 11] In determining whether an order issued as part of title 22 is appealable, we have emphasized the distinction between interlocutory and final judgments. *See In re Matthew W.*, 2006 ME 67, ¶ 15, 903 A.2d 333, 338 (finding an order to cease reunification efforts under 22 M.R.S. § 4041(2)(A–2)(1) (2008) to be interlocutory rather than a final judgment, and

therefore, not appealable under section 4006); *In re Kristy Y.*, 2000 ME 98, ¶ 4, 752 A.2d 166, 168 and *In re Erica B.*, 520 A.2d 342, 345 (Me.1987) (finding preliminary protection orders issued pursuant to 22 M.R.S. § 4034 (2008) are interlocutory and thus not subject to appeal).

[¶ 12] The court's judgment here was clearly not interlocutory. Title 22 M.R.S. § 4036(1–A)(A) states that parental rights and responsibility orders issued as part of title 22, shall have "the same force and effect as other orders entered pursuant to Title 19–A, section 1653." The "effect" of a parental rights and responsibilities order is finality; a court has made a final determination as to how parental rights and responsibilities are to be allocated. The court's judgment here establishes the finality of the decision. The court terminated the appointment of counsel and the guardian ad litem and no further judicial reviews or permanency planning hearings were scheduled. The order is also "subject to modification or termination in the same manner as other orders entered pursuant to Title 19–A, section 1653." 22 M.R.S. § 4036(1–A)(B). Given that the court's judgment has the same effect as an order issued pursuant to 19–A M.R.S. § 1653, and is subject to modification or termination in the same manner as an order issued pursuant to 19–A M.R.S. § 1653, it is, for legal purposes, a title 19–A order.[5]

[¶ 13] The plain language of the statute further supports this conclusion. A careful reading of this statute shows that the judgment was issued pursuant to title 19–A, not title 22. Title 22 M.R.S. § 4036(1–A) begins, "Upon request of a parent, the court may enter an order *pursuant to Title 19–A, section 1653* ...." 22 M.R.S.

**5.** That the child protection action may have concluded does not affect this result. The case remains viable to the extent that either party can seek modification upon motion pursuant to title 19–A or 22 M.R.S. § 4038 (2008) at any point in the future.

§ 4036(1–A) (emphasis added). Thus, the provisions of title 19–A, not title 22, govern.

[¶ 14] For these reasons, an order issued on the request of a parent, pursuant to 22 M.R.S. § 4036(1–A), is treated in the same manner as an order issued under title 19–A. The court's judgment is therefore subject to appeal in accordance with 19–A M.R.S. § 1652(5) (2008).[6]

**B. The Court's Decision on Parental Rights and Responsibilities**

■■ [¶ 15] In making a decision under title 19–A on parental rights and responsibilities, a child's residence, or parent-child contact, a court must apply the best interest of the child standard set forth in 19–A M.R.S. § 1653(3).[7] *See Grenier v. Grenier*, 2006 ME 99, ¶ 20, 904 A.2d 403, 408. The court's "judgment on the issue of best interest is entitled to substantial deference because [the] court is able to directly evaluate the testimony of the witnesses." *In re Michaela C.*, 2002 ME 159, ¶ 27, 809 A.2d 1245, 1253. The court's findings will stand unless clearly erroneous. *Grenier*, 2006 ME 99, ¶ 20, 904 A.2d at 408 (quotation marks omitted).

■ [¶ 16] Here, the DHHS caseworker, the guardian ad litem, and the father all testified as to how the mother's mental health issues interfered with her ability to care for Jacob, and expressed concern for Jacob's safety. The mother's mental health issues were evident from her testimony, which revealed an individual who was agitated, demeaning, and unable to focus on the issue at hand, namely determining what was in Jacob's best interest. The DHHS caseworker and guardian ad litem both testified that during the course of Jacob's placement with his father, which was approximately ten months, the father had been able to care for Jacob, provide

**6.** Title 19–A M.R.S. § 1652(5) (2008), Appeals, states in part, "A party aggrieved by an [parental rights and responsibilities] order may appeal in the same manner as provided for appeals from that court in other causes."

**7. 3. Best interest of child.** The court, in making an award of parental rights and responsibilities with respect to a child, shall apply the standard of the best interest of the child. In making decisions regarding the child's residence and parent-child contact, the court shall consider as primary the safety and well-being of the child. In applying this standard, the court shall consider the following factors:

A. The age of the child;
B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
C. The preference of the child, if old enough to express a meaningful preference;
D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
E. The stability of any proposed living arrangements for the child;
F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;
G. The child's adjustment to the child's present home, school and community;
H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
I. The capacity of each parent to cooperate or to learn to cooperate in child care;
J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
K. The effect on the child if one parent has sole authority over the child's upbringing;
L. The existence of domestic abuse between the parents, in the past or currently, and how that abuse affects:
(1) The child emotionally; and
(2) The safety of the child;
M. The existence of any history of child abuse by a parent;
N. All other factors having a reasonable bearing on the physical and psychological well-being of the child;
19–A M.R.S. § 1653(3)(A–N) (2008).

for his needs, and create a nurturing environment. Neither had concerns with Jacob's safety while in his father's care.

[¶ 17] The documentary and oral evidence presented to the court was sufficient to support the court's findings that the mother's persistent mental health issues interfered with her ability to effectively care for Jacob and participate in shared parenting, and that the father was able to provide a stable and safe environment for Jacob. Given these findings, the court did not err in concluding that it was in Jacob's best interest that his father be awarded sole parental rights and responsibilities, that his primary residence be with his father, and that his mother's visits be supervised.

The entry is:

Judgment affirmed.