MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2013 ME 64
Docket:        And-13-116
Submitted
 On Briefs:    May 30, 2013
Decided:       July 2, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>LEVY</u>, SILVER, GORMAN, and JABAR, JJ.

IN RE N.W.

LEVY, J.

[¶1]  Ruth James[1] appeals from an order of the District Court (Lewiston, *Beliveau, J.*) denying her motion to intervene in a child protection proceeding involving her grandniece, N.W.  We affirm the trial court's judgment.

## I.  BACKGROUND

[¶2]  This case began in June 2010, when the Department of Health and Human Services petitioned, pursuant to 22 M.R.S. § 4032(1)(A) (2012), for a child protection order.  In August, the Department requested, and the court granted, a preliminary protection order removing N.W. from her mother's custody and granting custody to the Department.  *See* 22 M.R.S. §§ 4034(1), (2), 4036(1)(F) (2012).  In the months that followed, the Department placed N.W. in several different placements.  In December 2010, the Department placed N.W. with James and her husband.  James is N.W.'s maternal great-aunt.

---

[1]  We refer to the appellant with a pseudonym to protect the identity of the minor child involved in this proceeding.

2

[¶3]  The court terminated the mother's and father's parental rights to N.W. in March 2012.  By June, the permanency plan for N.W. was that James would adopt her.

[¶4]  That plan was called into question, however, beginning in the fall of 2012.  The guardian ad litem's report of November 7 indicates that James "has struggled to complete the permanency plan for her to adopt."  The court held a permanency planning hearing the following day, and issued an order finding that "[d]ue to new information about Ms. [James] and [her husband]'s relationship, the Department may need to reconsider this placement."  The Department attempted to notify James of the proceeding as a "pre-adoptive parent who has entered into a pre-adoptive agreement with the [D]epartment."  *See id.* § 4005-D(6) (2012). James did not attend the November 8 hearing, nor did she obtain a license as a foster parent, file for adoption, or seek to obtain "interested person" or "participant" status pursuant to 22 M.R.S. § 4005-D(1)(C), (1)(E) (2012).[2]  The Department removed N.W. from James's care on November 17.

---

[2]  Title 22 M.R.S. § 4005-D (2012) provides, in relevant part:

>  **1. Definitions.**  For the purposes of this section, unless the context otherwise indicates, the following terms have the following meanings.
>
>    . . . .
>
>    **C.**  "Interested person" means a person the court has determined as having a substantial relationship with a child or a substantial interest in the child's well-being, based on the type, strength and duration of the relationship or

3

[¶5] Shortly thereafter, James filed a motion to intervene pursuant to M.R. Civ. P. 24, and a motion for a placement hearing. The motions alleged that N.W. had been in James's care since N.W. was six months old; that James and N.W. have a strong bond; that N.W. calls James her "mommy"; that James had complied with all aspects of the plan for her to adopt; and that N.W. would suffer irreparable harm unless returned to James. James also asserted that the Department removed N.W. from her care following its receipt of a false anonymous tip to law enforcement that James and her husband had engaged in a domestic dispute. By

interest. A person may request interested person status in a child protection proceeding either orally or in writing.

. . . .

**E.** "Participant" means a person who is designated as an interested person under paragraph C and who demonstrates to the court that designation as a participant is in the best interests of the child and consistent with section 4003. A person may request participant status in a child protection proceeding either orally or in writing.

**2. Interested persons.** Upon request, the court shall designate a foster parent, grandparent, preadoptive parent or a relative of a child by blood or marriage as an interested person unless the court finds good cause not to do so. The court may also grant interested person status to other individuals who have a significant relationship to the child, including, but not limited to, teachers, coaches, counselors or a person who has provided or is providing care for the child.

**3. Access to proceedings.** An interested person, participant or intervenor may attend and observe all court proceedings under this chapter unless the court finds good cause to exclude the person. The opportunity to attend court proceedings does not include the right to be heard or the right to present or cross-examine witnesses, present evidence or have access to pleadings or records.

**4. Right to be heard.** A participant or an intervenor has the right to be heard in any court proceeding under this chapter. The right to be heard does not include the right to present or cross-examine witnesses, present evidence or have access to pleadings or records.

4

way of relief, James sought intervention to obtain "primary residence and physical custody" of N.W.[3]  The Department and the guardian ad litem filed written oppositions to James's motions.

[¶6]  The court denied James's motions without holding a hearing, concluding in a written decision that permitting James to intervene would be inconsistent with the goal of permanency as provided by 22 M.R.S. § 4003(4) (2012), and that "granting [James's] motions would delay permanency [and adoption] and would be inconsistent with the best interests of the child."  James filed a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e), which the court denied.

## II.  DISCUSSION

[¶7]  An exception to the final judgment rule permits immediate appeals from the denial of a motion to intervene, which we review for an abuse of discretion.  *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911.  We address in turn James's arguments that the court abused its discretion in denying her motions (A) to intervene, and (B) for placement.

---

[3]  Attached to the motion to intervene, James provided a copy of the Department's report of an October 12, 2012, "family plan" meeting with James.  The report raised the possibility of changing N.W.'s placement due to the Department's concerns regarding, ongoing discord between James and her husband, James's failure to obtain licensing as a foster parent, James's failure to leave her husband despite her promises to do so for the sake of N.W., James's unstable housing and finances, and James's lack of candor with the Department.  The report recognized that James had otherwise provided stable care for N.W.

A.    Motion to Intervene

[¶8]  As an intervenor in a child protection proceeding pursuant to the Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099-H (2012), a party can request, among other things, review of the child's placement. *See* 22 M.R.S. §§ 4005-D(5), 4038(2).   The Act also gives foster parents, preadoptive parents, and relatives providing care a right to notice and an opportunity to be heard in child protection proceedings.  *See id.* § 4005-D(6).  But those rights are limited, and they "may not be construed to require that any foster parent, preadoptive parent or relative providing care for the child be made a party to the proceeding solely on the basis of the notice and right to be heard." *Id.*

[¶9]   James contends that the court erred in denying her motion for permissive intervention pursuant to M.R. Civ. P. 24(b).[4]  "Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common."  M.R. Civ. P. 24(b).  Further, "the court shall consider whether the intervention will unduly

---

[4]   James's appellate brief does not raise intervention as a matter of right pursuant to M.R. Civ. P. 24(a).  We also note that the court did not address, and the Department has not challenged, James's standing to intervene. *See Davis v. Anderson*, 2008 ME 125, ¶ 17, 953 A.2d 1166 (establishing that to successfully intervene, a party must demonstrate that it has standing to assert the claim or defense it seeks to raise as an intervenor); *see also* 22 M.R.S. § 4005-E(2) (2012) (providing that in a child protection proceeding, a "relative" may request placement of a minor child with the relative if the court has designated the relative as an "interested person" or a "participant" in the proceeding, or if the relative has intervenor status, as provided by 22 M.R.S. § 4005-D(1)(C), (D), (E)).  Thus, we assume without deciding that James had standing to intervene as a preadoptive parent with a preadoptive agreement with the Department, or as a possible de facto parent, as James asserts in her appellate brief.

6

delay or prejudice the adjudication of the rights of the original parties." *Id.* In a child protection proceeding, intervention is permitted if, in addition to complying with Rule 24, the intervention is consistent with the purposes of the Act, as established by 22 M.R.S. § 4003. *See* 22 M.R.S. § 4005-D(1)(D).[5]

[¶10] James contests the trial court's denial of her motion to intervene on several grounds, including that intervention (1) was timely and thus would not unduly delay or prejudice the adjudication of the rights of the original parties to the proceeding, and (2) is not contrary to the purposes established by 22 M.R.S. § 4003. Each contention is considered in turn.

1. Timeliness, Undue Delay, and Prejudice

[¶11] In the context of a motion to intervene, "the concept of timeliness . . . is not measured, like a statute of limitations, in terms of specific units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation." *P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011); *see also MaineHealth*, 2011 ME 115, ¶ 16, 31 A.3d 911 (holding that intervention that would unduly

---

[5] Title 22 M.R.S. § 4005-D(1)(D) defines an "intervenor" as "a person who is granted intervenor status in a child protective proceeding pursuant to the Maine Rules of Civil Procedure, Rule 24, as long as intervention is consistent with section 4003." Further, section 4005-D(5) provides as follows:

> **Intervention.** An intervenor may participate in any court proceeding under this chapter as a party as provided by the court when granting intervenor status under Maine Rules of Civil Procedure, Rule 24. An intervenor has the rights of a party as ordered by the court in granting intervenor status, including the right to present or cross-examine witnesses, present evidence and have access to pleadings and records.

burden the proceedings may constitute undue delay for purposes of Rule 24(b)). We begin by examining the rights of the original parties to this proceeding, and then consider whether James's intervention would unduly delay or prejudice the adjudication of those rights.

[¶12]  Here, the remaining original parties were N.W. and the Department, because the court had already terminated the parental rights of N.W.'s parents. N.W.'s interests and rights in the proceeding included prompt adjudication of a permanent placement in her best interests, here represented by the guardian ad litem's stated goal of adoption.  *See* 22 M.R.S. § 4005(1)(B) (providing that the guardian ad litem must advocate for the child's best interests before the court); *id.* § 4038-B(4)(A)(2) (providing that adoption is among the possible means of achieving permanency for the child).  The Department's interests in the proceeding included protecting N.W. from abuse and neglect, and promoting the goal of permanency.  *See id.* §§ 4003, 4004.  Although the Department successfully petitioned to terminate the parents' rights, it was still required, among other things, to monitor N.W.'s placement to prevent abuse and neglect, and to pursue a permanent living arrangement for N.W.  *See id.* §§ 4003(4), 4004(1).

[¶13]  Thus, to state the obvious, both N.W. and the Department had an interest in the prompt adjudication of a permanent and safe living arrangement for N.W.  In light of this interest, it was well within the bounds of the trial court's

8

discretion to conclude that James's intervention at this late stage in the child protection proceeding would have unduly delayed adjudication of a prompt and permanent placement for N.W. Furthermore, and contrary to James's argument, the court's decision reflects that it fully considered N.W.'s best interests.[6]

2.      Purposes of 22 M.R.S. § 4003

[¶14]  James next challenges the trial court's finding that her intervention was inconsistent with the purposes established by 22 M.R.S. § 4003. As relevant to this case, the statute's purposes embrace (1) protecting children from abuse and neglect; (2) preserving the right to family integrity, including, "[p]lac[ing] children who are taken from the custody of their parents with an adult relative when possible"; and (3) promoting "permanent plans for the care and custody of children who cannot be returned to their family." 22 M.R.S. § 4003.

[¶15]  The trial court properly concluded that James failed to make a prima facie case that her intervention was consistent with the purposes of section 4003, because her intervention would have undermined one of those purposes without furthering any of the others. The court concluded that granting James's motion would have interfered with permanency planning for N.W.'s adoption. The record supports this finding, because James had already delayed permanency for N.W. In

---

[6] Contrary to James's contentions, it is within the sound discretion of a trial court to decline to hold an evidentiary hearing on a motion to intervene. *See* M.R. Civ. P. 7(b)(7); *Davis*, 2008 ME 125, ¶ 17, 953 A.2d 1166.

9

the nearly two years during which N.W. was in James's care, James did not obtain a license as a foster parent, file for adoption, or otherwise establish a permanent legal relationship with N.W. Meanwhile, granting James intervenor status would not promote any other potentially applicable statutory purpose. Thus, contrary to James's contentions, her intervention would not fulfill the goal of priority placement of children with a relative pursuant to section 4003(3-A), because for that purpose, "relative" does not include a great-aunt.[7] *See id.* § 4002(9-B) (defining "relative" to mean "the biological or adoptive parent of the child's biological or adoptive parent, or the biological or adoptive sister, brother, aunt, uncle, or cousin of the child"). In light of James's failure to establish a permanent and legally recognized relationship with N.W. after having a lengthy opportunity to do just that, the trial court did not err in declining to provide James with an additional opportunity to do so by intervening.

B.    Motion for Placement

[¶16]  We also discern no error in the court's denial of James's motion for placement.  The right of a non-party relative to seek a placement order is governed by 22 M.R.S. § 4005-E(2), which provides:

---

[7] Thus, contrary to James's assertions, she is not a relative entitled to notice of proceedings involving N.W. pursuant to 22 M.R.S. § 4005-D(6). To the extent that James was a preadoptive parent entitled to notice and to be heard at the November 8 hearing pursuant to section 4005-D(6), the record does not reveal all of the details regarding the Department's apparent attempt to notify James. Regardless, upon the court's consideration of her motions to intervene and for placement, James was heard.

A relative who is designated as an interested person or a participant under section 4005-D or who has been granted intervenor status under the Maine Rules of Civil Procedure, Rule 24 may request the court to order that the child be placed with the relative. A relative who has not been designated as a participant under section 4005-D may make the request for placement in writing. In making a decision on the request, the court shall make placement with a relative a priority for consideration for placement if that placement is in the best interests of the child and consistent with section 4003.

[¶17] As the child's great-aunt, James does not qualify as a "relative" under this section. *See* 22 M.R.S. § 4002(9-B). Because of this, and having been properly denied intervenor status, James did not have standing to seek placement of the child with her. The court did not err by denying her request.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Donald S. Hornblower, Esq., Hornblower, Lynch, Rabasco & Van Dyke, Lewiston, for appellant great-aunt

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2010-48