MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 91
Docket:         Yor-24-552
Argued:         May 6, 2025
Decided:        September 30, 2025

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.[*]
Majority:       MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.
Dissent:        STANFILL, C.J.

## IN RE CHILDREN OF KRYSTAL W.

DOUGLAS, J.

[¶1]  Pursuant to the Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099-P (2025) (the Child Protection Act), the Department of Health and Human Services placed two children in its custody with a husband and wife as resource parents pending the conclusion of an ongoing child protection proceeding.  After the Department subsequently removed the children from their care nineteen months later, the former resource parents filed motions seeking to intervene in the protective custody case and requesting an expedited judicial review of the children's placement.  The District Court (Springvale and Biddeford, *Duddy, J.*) entered orders denying the motions, and the former resource parents appealed.  Because we conclude that the orders are not appealable, we dismiss the appeal.

---

[*] Although Justice Horton participated in the appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]  The children entered Department custody after the Department initiated child protection proceedings against the children's parents in 2020 and 2021.  The Department eventually filed petitions to terminate the parents' parental rights, and the court held a final hearing on the petitions in March 2023.  The court entered judgments terminating the parents' parental rights; the parents did not appeal.

[¶3]  In February 2023, one month before the final hearing on the petitions to terminate the parents' parental rights, the Department placed the children with the former resource parents.  Then, on September 12, 2024, the Department removed the children from their care after receiving a report from the older child's school about an incident involving the husband.

[¶4]  On October 31, 2024, the former resource parents filed a motion pursuant to 22 M.R.S. § 4005-D(1)(D) (2025) and M.R. Civ. P. 24 to intervene in the child protection proceeding.  They asserted that they are licensed foster parents, that the children had lived with them for nineteen months, and that they are in the process of filing petitions to adopt the children.  They argued that having intervenor status would ensure that their "legal interests" are protected.  They also filed a motion seeking an expedited judicial review of the

children's placement. The motion offered an explanation of the circumstances leading to the children's removal from their care.

[¶5] The Department opposed the motions, arguing that the request for intervention was unnecessary and contrary to the children's best interests, and that it also would frustrate the purposes of the Child Protection Act, *see* 22 M.R.S. § 4003 (2025). The Department provided its account of the circumstances that led to the children's removal and expressed other concerns about the children's care in the home.

[¶6] On November 6, 2024, the court summarily denied the motions, and the former resource parents timely appealed. We directed the parties to address the justiciability of the appeal given that the orders from which they seek to appeal are not among those orders expressly designated as appealable under 22 M.R.S. § 4006 (2025).

## II. DISCUSSION

[¶7] The right to appeal a Title 22 child protection order is "purely statutory." *In re Dustin C.*, 2008 ME 89, ¶ 6, 952 A.2d 993 (quotation marks omitted). "The Legislature, in granting a right to appeal in certain cases, may restrict, limit or otherwise condition its availability as it sees fit." *Id.* (quotation marks omitted).

4

[¶8]  Title 22 M.R.S. § 4006 expressly limits the right of appeal from orders entered in child protection matters.  Section 4006 provides:

> A party aggrieved by an order of a court entered pursuant to section 4035, 4054 or 4071 may appeal directly to the Supreme Judicial Court sitting as the Law Court, and such appeals are governed by the Maine Rules of Appellate Procedure.
>
> Appeals from any order under section 4035, 4054 or 4071 must be expedited.  Any attorney appointed to represent a party in a District Court proceeding under this chapter shall continue to represent that client in any appeal unless otherwise ordered by the court.
>
> *Orders entered under this chapter under sections other than section 4035, 4054 or 4071 are interlocutory and are not appealable*.

(Emphasis added.)

[¶9]  Indeed, we have specifically recognized that "[p]ursuant to 22 M.R.S. § 4006, only three types of orders may be appealed in child protection matters: a jeopardy order [under section 4035], a judgment terminating parental rights [under section 4054], and a medical treatment order [under section 4071].  *Any other Title 22 order is not justiciable.*"  *In re Child of Nicholas P.*, 2019 ME 152, ¶ 28, 218 A.3d 247 (emphasis added); *see also In re Kristy Y.*, 2000 ME 98, ¶ 12, 752 A.2d 166 ("All appeals in child protective cases except those specifically authorized by 22 M.R.S.A. § 4006 are interlocutory appeals.").

[¶10]  The former resource parents are appealing the denial of two motions—their motion for expedited judicial review and their motion to intervene in the child protection proceeding.  Clearly, both are "[o]rders entered under [the child protection] chapter [of Title 22] other than section 4035, 4054 or 4071" and are therefore "interlocutory and . . . not appealable." 22 M.R.S. § 4006.  Moreover, as to the appeal from the denial of their motion for expedited judicial review, it is well settled that judicial review orders in general and dispositional orders in particular are interlocutory and not appealable. *See In re Child of Nicholas G.*, 2021 ME 48, ¶ 5, 259 A.3d 783; *In re Corey T.*, 2018 ME 20, ¶ 1 n.2, 178 A.3d 1238 (citing *In re Z.S.*, 2015 ME 110, ¶ 8, 121 A.3d 1286).  The question presented here is whether an appeal will lie from the denial of a motion to intervene despite section 4006's clear limitation of appeals from Title 22 child protection orders.

[¶11]  Relying on our decision in *In re N.W.*, 2013 ME 64, ¶ 7, 70 A.3d 1219, the former resource parents contend that we should consider the appeal of the court's denial of their motion to intervene because it falls under the death knell exception to the final judgment rule.  In that case, a relative filed a motion to intervene in a child protection proceeding pursuant to M.R. Civ. P. 24, which

6

is expressly referenced in 22 M.R.S. § 4005-D(5).[1]  The trial court denied the motion.  On appeal, we affirmed the order denying the motion and stated, without elaboration, that an appeal from the denial of a motion to intervene is permissible under an exception to the final judgment rule, citing *State v. MaineHealth,* 2011 ME 115, ¶ 7, 31 A.3d 911.[2] *In re N.W.*, 2013 ME 64, ¶¶ 1, 6-7, 70 A.3d 1219.

[¶12]  One year following our decision in *In re N.W.*, however, we clarified that where the Legislature has unequivocally specified that only certain orders in child protection matters are appealable, we lack authority to circumvent the

---

[1]  Title 22 M.R.S. § 4005-D(5) (2025) provides:
>    An intervenor may participate in any court proceeding under this chapter as a party as provided by the court when granting intervenor status under Maine Rules of Civil Procedure, Rule 24.  An intervenor has the rights of a party as ordered by the court in granting intervenor status, including the right to present or cross-examine witnesses, present evidence and have access to pleadings and records.

"Intervenor" is defined as "a person who is granted intervenor status in a child protective proceeding pursuant to the Maine Rules of Civil Procedure, Rule 24, as long as intervention is consistent with section 4003." *Id.* § 4005-D(1)(D).

[2]  *State v. MaineHealth* did not involve a child protection proceeding but rather an antitrust action filed by the State against MaineHealth, Maine Medical Center, and two affiliated physician practices. 2011 ME 115, ¶¶ 1-2, 31 A.3d 911.  A competing hospital had filed a motion to intervene in the action, and following its denial took an interlocutory appeal, which we entertained, stating, "we have recognized an exception to the final judgment rule for appeals challenging the denial of a motion to intervene." *Id.* ¶ 7.  We have recognized that in civil cases generally, an appeal from the denial of a motion to intervene may fall within one of the judicially created exceptions to the final judgment rule. *See generally* Alexander, *Maine Appellate Practice* § 304(a) (6th ed. 2022); 2 Harvey, *Maine Civil Practice* § 24:1 at 607 (2011); *Davis v. Anderson*, 2008 ME 125, ¶ 9, 953 A.2d 1166; *Francis v. Dana-Cummings*, 2007 ME 16, ¶ 15, 915 A.2d 412; *Donna C. v. Kalamaras*, 485 A.2d 222, 223 (Me. 1984).  Here, as discussed above and recognized by *In re L.R.*, 2014 ME 95, ¶¶ 5-9, 97 A.3d 602, we are dealing with an express statutory limitation on interlocutory appeals.

statute by establishing exceptions for interlocutory appeals not permitted by section 4006. *See In re L.R.*, 2014 ME 95, ¶¶ 5-9, 97 A.3d 602. In that case, the child's grandmother appealed from the denial of a motion for kinship placement pursuant to former 22 M.R.S. § 4005-E(2) (2013). The trial court denied the motion, finding that the requested placement would not be in the child's best interest. *Id.* ¶ 4. We dismissed the appeal, holding that "[b]ecause the final judgment rule is a judicially created prudential rule, we may fashion exceptions to it," but we do not have the authority "to apply judge-made exceptions to statutory provisions." *Id.* ¶ 9.

[¶13] The Department argues that the reasoning of *In re L.R.* applies equally to an appeal from an order denying a motion to intervene and urges us to clarify the issue in light of what appears to be a conflict in our caselaw.[3] It is the Department's position that, consistent with *In re L.R.*, our appellate jurisdiction and power to review interlocutory appeals of orders in child

---

[3] It appears that we have addressed appeals from motions to intervene in child protection proceedings four times in addition to *In re N.W.* and the instant appeal. Two cases were decided prior to *In re L.R.. See In re N.W.*, 2013 ME 64, ¶ 7, 70 A.3d 1219 (affirming the denial of a motion to intervene after applying, without discussing, an exception to the final judgment rule); *In re Nickayla P.*, Mem-09-141 (Aug. 4, 2009) (affirming the court's grant of a motion to intervene over the parents' objection after their parental rights had been terminated). Two cases were decided after *In re L.R.*, although neither references that decision*. See In re Child of Charles H.*, Mem-18-100 (Dec. 11, 2018) (affirming denial of motion to intervene without addressing justiciability); *In re Children of Mary J.,* 2019 ME 2, ¶ 17, 199 A.3d 231 (affirming the denial of a motion to intervene raising jurisdictional issue).

8

protection matters "are entirely and exclusively those plainly conferred by statute." *Id.* We agree.

[¶14] The appeal of an order denying a motion to intervene in an ongoing child protection matter is indisputably interlocutory. The judicially created exception to the final judgment rule simply does not apply because, as we held in *In re L.R.,* we lack authority to override section 4006's express limitation on interlocutory appeals of child protection orders and "cannot substitute our judgment for that of the Legislature." 2014 ME 95, ¶¶ 5, 9, 97 A.3d 602.

[¶15] Our determination that section 4006's plain, unambiguous language strictly limits appeals from orders in child protection proceedings and our express recognition of the Legislature's prerogative to do so ordinarily would suffice to settle the question presented. However, to dispel any lingering uncertainty occasioned by section 4005-D(5)'s reference to Rule 24 as well as by our own uneven treatment of the issue in the past, we take this opportunity to examine the matter more closely. Indeed, a review of the pertinent legislative history confirms that the Legislature deliberately narrowed the scope of appellate review of child protective orders—and has maintained that narrow scope—even as it continued to redefine the procedural and

participatory rights of nonparties in child protection proceedings—including by way of intervention pursuant to 22 M.R.S. § 4005-D(5).

[¶16]  When the Legislature first enacted the Child and Family Services and Child Protection Act in 1979, the statute set out a general right of appeal from orders in child protection cases.  *See* P.L. 1979, ch. 733, § 18 (effective July 3, 1980) ("A party aggrieved by an order of a court under [the Child and Family Services and Child Protection Act] may appeal to the Superior Court in accordance with the District Court Civil Rules."[4]).  Several changes were made to section 4006 in 1984.  First, appeals were to be taken "directly to the Supreme Judicial Court sitting as the Law Court" instead of to the Superior Court.  P.L. 1983, ch. 772, § 3 (effective July 25, 1984).  Second, the statute as amended mandated that "[a]ppeals from any order under this chapter shall be expedited" and "[a]ny attorney appointed to represent a party in a District Court proceeding under this chapter shall continue to represent that client in any appeal unless otherwise ordered by the court."  *Id.*  The purpose of these amendments was "to expedite the appellate process for children" in order to

---

[4] The reference to "the District Court Civil Rules" was subsequently changed to "the Maine Rules of Civil Procedure," with a further clarification that this was intended to refer specifically to Rules 72 through 76B of the Maine Rules of Civil Procedure, the rules governing all appeals from the District Court to the Superior Court.  *See* P.L. 1997, ch. 715, § A-3 (effective June 30, 1998) (codified at 22 M.R.S. § 4006 (2024)).  The reference to "the Maine Rules of Civil Procedure" was more recently replaced with "the Maine Rules of Appellate Procedure." *See* P.L. 2023, ch. 638, § 25 (effective Aug. 9, 2024).

shorten the time that children "remain[] in the same inpermanent [sic] and unacceptable situation which led to the petition for termination of parental rights in the first place." L.D. 2166, Statement of Fact (111th Legis. 1984).

[¶17] In 1997, the Legislature repealed and replaced section 4006 as part of a broader reform effort that sought to further expedite child protection proceedings.[5] P.L. 1997, ch. 715, § A-3 (effective June 30, 1998) ("An Act to Require Expeditious Action in Child Protection Cases"). As amended, section 4006 took on its current form that limits appeals to the three specific orders identified above—jeopardy orders pursuant to section 4035; judgments terminating parental rights pursuant to section 4054; and medical treatment orders pursuant to section 4071—and declared that all other orders entered under Chapter 1071 of Title 22 "are interlocutory and are not appealable." The prohibition against appealing interlocutory orders was consistent with the Legislature's "paramount concern" of protecting "the health and safety of children" by, among other things, "promot[ing] the early establishment of

---

[5] A committee convened by then Chief Justice Daniel Wathen assessed the general state of child protection proceedings in Maine and issued a report offering recommendations for improvement. *See* Report of the Committee to Study the Role of the Courts in Protecting Children (Mar. 1997). The committee found that "[c]learly there are delays that occur at every point of the appellate process" and that "Maine is not alone in experiencing an increase in the number of appeals taken from Orders entered in child protective cases, particularly Termination of Parental Rights Orders." *Id.* at 54. The revision to 22 M.R.S. § 4006 strictly limiting the types of Title 22 orders that may be appealed and mandating that appeals be expedited appears to be a direct response to the committee's concerns about delays in the process.

permanent plans for the care and custody of children who cannot be returned to their family" and "prevent[ing] needless delay" in the development of such plans. 22 M.R.S. § 4003(3)-(4).

[¶18] It is against this backdrop of constricting rights to appellate review that we must view the Legislature's ongoing efforts to refine provisions addressing who may have access to and participate in child protective proceedings, and to what extent. In 1985, for example, foster parents were authorized to petition for intervenor status in a proceeding involving a child who was currently living with them and had been residing in the home for at least one year. P.L. 1985, ch. 424 (effective Sept. 19, 1985) (codified at former 22 M.R.S.A. §-4005-A). In 1994, the grandparent of a child was authorized to petition to intervene in a proceeding involving the child. *See* P.L. 1993, ch. 697, § 1 (effective July 14, 1994) (codified at former 22 M.R.S.A. § 4005-B). In 1997, as part of the same legislative reforms limiting section 4006 appeal rights, the Legislature granted foster parents and other caregivers rights of notice of judicial review and other hearings, and rights to testify in those hearings but not to call other witnesses, present other evidence, attend any other portion of the hearing, or have access to pleadings or records. *See* P.L. 1997, ch. 715, § B-5 (effective June 30, 1998) (codified at former 22 M.R.S.A. § 4005-C).

12

[¶19]  Then in 2002, based on recommendations of a committee formed to further study the child protective system,[6] the Legislature overhauled the provisions governing access to and participation in child protection proceedings.  Because numerous bills had been introduced addressing nonparty participation rights,[7] the committee attempted to harmonize the bills in considering the proper scope of participatory rights, including "[t]he appropriate role of intervenors; who, if anyone, should have automatic intervenor status; who should be permitted to apply for intervenor status; and what criteria the court should use in determining whether to grant intervenor status."  Final Report of the Committee to Review the Child Protective System, App. A at 2 (Dec. 2001).

[¶20]  As a result, the Legislature repealed the then-existing provisions governing nonparty participation, including those providing for petitions for intervention, set out in 22 M.R.S.A. §§ 4005-A, 4005-B, and 4005-C, and enacted

---

[6]  The committee was formed in response to "tremendous concern that the existing child protective laws and system are not adequately and consistently protecting the children they were designed to serve" and because "families and other participants in the system believe their rights and interests are not adequately and consistently taken into account."  H.P. 1385 (120th Legis. 2001); *see also* Final Report of the Committee to Review the Child Protective System, App. A at 1 (Dec. 2001); L.D. 1793 (120th Legis. 2001).

[7]  Among the bills addressing this issue were those that proposed to allow godparents to petition for intervenor status, give foster parents automatic intervenor status in all cases, and provide long-term foster parents the right to intervene in any proceeding in which parental rights have been terminated.  Final Report of the Committee to Review the Child Protective System at 14 (Dec. 2001).

in their place the current, comprehensive framework in 22 M.R.S. § 4005-D (2025) governing access to and participation in child protection proceedings. *See* P.L. 2001, ch. 696, § 16 (effective July 25, 2002). Rather than determine intervenor status based strictly on a petitioner's relationship to the child (such as foster parent, grandparent, or other caregiver), the Legislature "eliminat[ed] special provisions for certain persons who seek intervenor status"; established three tiers of nonparty participation in child protection proceedings, including intervention as a full party in the matter; and adopted a single standard—Maine Rule of Civil Procedure 24—as the standard governing consideration of a request to intervene.[8] *See* L.D. 2149, Summary (120th Legis. 2002).

---

[8] Section 4005-D establishes three levels of nonparty participation in a child protection proceeding. An "interested person" may observe court proceedings but has no opportunity to speak during the proceeding. *See* 22 M.R.S. § 4005-D(3) (2025). A court may grant "interested person" status to any person who the court determines has "a substantial relationship with a child or a substantial interest in the child's well-being, based on the type, strength and duration of the relationship or interest," *id.* § 4005-D(1)(C), but "[u]pon request . . . shall designate a foster parent, grandparent, preadoptive parent or a relative of a child as an interested person unless the court finds good cause not to do so," *id.* § 4005-D(2); *see also* L.D. 2149, Summary at 19-20 (120th Legis. 2002) (expressing the Legislature's intent that foster parents, grandparents, preadoptive parents and a relative of the child by blood relation or marriage be accorded such status). A "participant" is a person who qualifies as an "interested person" but may be granted the additional "right to be heard in any court proceeding" upon demonstrating that it "is in the best interests of the child and consistent with section 4003," which sets out the purposes of the Child Protection Act. 22 M.R.S. § 4005-D(1)(E), (4). An "intervenor" is accorded full party status, including the rights to access pleadings and records, present evidence, present witnesses, and cross-examine witnesses. *Id.* § 4005-D(1)(D), (5).

The determination of "intervenor status," though made in accordance with Rule 24, is also subject to the court's determination that "intervention is consistent with section 4003." *Id.* § 4005-D(1)(D). Contrary to the dissent's artificial distinction between "interested person" and "participant" status on the one hand and "intervenor" status on the other, section 4005-D clearly establishes a unified framework for determining nonparty access and participation along a spectrum that affords

[¶21]  Despite section 4005-D(5)'s reference to Rule 24 as the standard by which to gauge requests for intervention in child protection proceedings, the Legislature made no further attempt to authorize interlocutory appeals from denials of intervention requests.  An order "granting [or denying] intervenor status under Maine Rules of Civil Procedure, Rule 24," 22 M.R.S. § 4005-D(5), is nonetheless an order "*entered under this chapter* [1071 of Title 22]."  22 M.R.S. § 4006 (emphasis added).  We discern no intent on the part of the Legislature to override the express limitation on appeals of interlocutory orders in section 4006.

[¶22]  Contrary to the dissent's perspective, our decision today does not "revers[e] course"; nor does it "change our jurisprudence."  Dissenting Opinion ¶¶ 29, 39.  To be sure, our jurisprudence includes *In re L.R.*, which held that section 4006 unequivocally deems all but the three specified orders therein as "interlocutory and . . . not appealable," and we lack authority "to apply judge-made exceptions to statutory provisions."  2014 ME 95, ¶¶ 5, 9, 97 A.3d 602.  As noted above, *see supra* n.3, apart from this case, only twice since

---

progressively greater participation in the proceeding depending upon whether one is granted status as an "interested person," a "participant," or an "intervenor."  Moreover, there is no express provision for an interlocutory appeal when a request for participation is denied at any of the three levels, even though the denial of participant status may be equally if not more prejudicial than denial of full intervenor status, particularly when it concerns a request from one who already is an "interested person," such as a foster parent, grandparent, or other relative of the child.

*In re L.R.* was decided have we entertained an appeal involving the denial of a motion to intervene in a child protection proceeding. *See In re Children of Mary J.*, 2019 ME 2, ¶ 17, 199 A.3d 231; *In re Child of Charles H.*, Mem-18-100 (Dec. 11, 2018). Neither case referenced *In re L.R.*, nor does it appear that the question of justiciability was presented as an issue for consideration (although *In re Children of Mary J.* does make a general reference to the "recognized . . . exception to the final judgment rule for appeals challenging the denial of a motion to intervene," citing *State v. MaineHealth,* 2011 ME 115, ¶ 7, 31 A.3d 911, which, as noted, *see supra* n.2, did not involve an appeal of a child protection order). *In re Children of Mary J.,* 2019 ME 2, ¶ 5, n.3, 199 A.3d 231.[9]

[¶23] Moreover, the dissent's reliance on three cases as the basis for its conclusion that an order denying intervention is "not an order 'entered under' the Child Protection Act" is misplaced. *See* Dissenting Opinion ¶¶ 32-35, 39. None of the cases involved an interlocutory appeal from a motion to intervene and none are necessarily inconsistent with our holding today. *See In re Child of*

---

[9] Although *In re Children of Mary J.* discusses whether the intervention request in that case was a request for intervention of right under Rule 24(a) or a request for permissible intervention under Ruel 24(b), we note that *every* request for intervention in a child protection proceeding is effectively a request for permissible intervention because even if a party satisfies the standard in Rule 24(a), the trial court retains discretion to determine whether the request is consistent with the purposes of the Child and Family Services and Child Protection Act, *see* 22 M.R.S. §§ 4003, 4005-D(1)(D). This further supports our view that orders on motions to intervene in child protection proceedings are "[o]rders entered under this chapter [1071 the Child and Family Services and Child Protection Act]" even though Rule 24 provides the standard by which intervention requests are judged.

*Nicholas P.*, 2019 ME 152, ¶ 29, 218 A.3d 247 (holding that father's appeal of parentage determination made in the course of a protective custody proceeding was justiciable "because it [was] *from a final judgment* that was entered pursuant to the MPA and is *not itself a Title 22 order*" (emphasis added)); *In re Children of Shirley T.*, 2019 ME 1, ¶¶ 10-26, 199 A.3d 221 (entertaining an appeal from an order on a motion to transfer jurisdiction of a child protection proceeding to a tribal court pursuant to the Indian Child Welfare Act and specifically noting that "[o]ur consideration of this appeal *does not conflict with our prior decisions holding that only jeopardy orders, termination of parental rights judgments, and medical treatment orders may be appealed* pursuant to 22 M.R.S. § 4006" and "[t]he decision at issue here *is not a child protection order issued pursuant to title 22*; it is instead a jurisdictional order entered pursuant to ICWA" (emphasis added)); *In re Jacob C.*, 2009 ME 10, ¶¶ 7-14, 965 A.2d 47 (determining that section 4006 did not preclude appellate review because *the appeal was neither interlocutory nor taken from a child protection order* but rather from a *final judgment* adjudicating parentage "*issued pursuant to title 19-A*, not title 22" (emphasis added)).

[¶24]  Had the Legislature intended to establish another exception for interlocutory appeals in section 4006 it could have done so—but it did not.

Instead, the limitation on appeals to those from the three orders identified in the statute has remained unchanged since 1997. This is consistent with Chapter 1071's objective of promoting timely resolution of child protection matters so as to achieve permanency and stability for children as expeditiously as feasible.

[¶25] The Legislature has the prerogative to amend the statute if it wishes to expand or alter the scope of appellate review with respect to this or any other interlocutory order entered in a child protective proceeding. Its refusal to do so to date leads us to conclude that this appeal is not permitted.

The entry is:

Appeal dismissed.

---

STANFILL, C.J., concurring in part and dissenting in part.

[¶26] I concur in the dismissal of the appeal from the order denying the former resource parents' motion for an expedited hearing. That order is not reviewable, and thus the portion of the appeal challenging that order must be dismissed. *See* 22 M.R.S. § 4006 (2025). Because I believe that the order denying the former resource parents' motion to intervene is appealable,

however, I would review that order and affirm the denial of intervention on the merits. For this reason, I respectfully dissent from the Court's Opinion dismissing the appeal to the extent that it challenges that order.

[¶27] Although the denial of a motion to intervene is undoubtedly an interlocutory order, we have long followed the federal approach and concluded that this type of order is immediately appealable as an exception to the final judgment rule. *See, e.g., Donna C. v. Kalamaras*, 485 A.2d 222, 223 (Me. 1984); *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911.

[¶28] Despite the provisions of 22 M.R.S. § 4006, we have treated child protection cases no differently than other civil cases, and we have reviewed orders on intervention motions in child protection appeals on multiple occasions. *See In re Children of Mary J.*, 2019 ME 2, ¶¶ 5 n.3, 6-18, 199 A.3d 231 (expressly applying an exception to the final judgment rule and affirming the denial of a motion to intervene); *In re N.W.*, 2013 ME 64, ¶¶ 7-15, 70 A.3d 1219 (same); *In re Child of Charles H.*, Mem-18-100 (Dec. 11, 2018) (affirming the denial of a motion to intervene); *In re Nickayla P.*, Mem-09-141 (Aug. 4, 2009) (affirming the grant of a motion to intervene over the parents' objection).

[¶29] Notwithstanding that history, the Court is now reversing course, asserting that 22 M.R.S. § 4006 requires we do so. I disagree.

[¶30]  Section 4006 limits the kinds of *child protective orders* that are appealable to orders entered under 22 M.R.S. § 4035 (2025) (jeopardy), 22 M.R.S. § 4054 (2025) (termination of parental rights), or 22 M.R.S. § 4071 (2025) (medical treatment).  22 M.R.S. § 4006.  It specifically states that other "[o]rders *entered under this chapter*" are interlocutory and are not appealable. *Id.* (emphasis added).

[¶31]  We have said that we cannot craft exceptions to section 4006. *In re L.R.*, 2014 ME 95, ¶¶ 4, 9, 97 A.3d 602 (dismissing an appeal from an order denying a motion for kinship placement filed under 22 M.R.S. § 4005-E(2) (2013)).  But we have also made clear that section 4006 does not bar all appeals other than jeopardy, termination, and medical treatment orders just because the order appealed from was entered in a child protection case. *E.g.*, *In re Child of Nicholas P.*, 2019 ME 152, ¶¶ 28-29, 218 A.3d 247.

[¶32]  For example, we have held that a final determination of parental rights authorized by a child protection statute and entered as part of a child protection proceeding is reviewable on appeal notwithstanding section 4006. *In re Jacob C.*, 2009 ME 10, ¶¶ 7-14, 965 A.2d 47.  We rejected the argument that because the parental rights order was entered pursuant to 22 M.R.S. § 4036(1-A) (2008), appellate review was unavailable according to section

20

4006. *Id.* Instead, we explained that "[a] careful reading of" section 4036(1-A) showed "that the judgment was issued pursuant to title 19-A, not title 22." *Id.* ¶ 13. Therefore, although the parentage determination was specifically authorized by 22 M.R.S. § 4036(1-A), "the provisions of title 19-A, not title 22, govern[ed]," and section 4006 did not preclude appellate review.[10] *Id.*

[¶33]  Similarly, in *In re Child of Nicholas P.*, addressing the question "whether a parentage determination entered in a child protection action can be properly appealed," we said:

> As we have recognized, an order entered in the *context* of a child protection case, but which is not *itself* an order entered pursuant to the Child and Family Services and Child Protection Act, may be cognizable on appeal despite the limitations created by section 4006. A parentage determination, even when it is part of a child protection proceeding, is not governed by Title 22 but rather by the [Maine Parentage Act]. The father's parentage appeal is therefore justiciable because it is from a final judgment that was entered pursuant to the [Maine Parentage Act] and is not itself a Title 22 order.

*In re Child of Nicholas P.*, 2019 ME 152, ¶¶ 28-29, 218 A.3d 247 (citations omitted).

---

[10] The version of 22 M.R.S. § 4036(1-A) that we examined in *In re Jacob C.*, which remains the same today in all relevant respects, authorized a trial court to enter—upon the request of a parent and in a child protection proceeding—an order governing parental rights and responsibilities "pursuant to Title 19-A, section 1653 if the court determines that the order will protect the child from jeopardy and is in the child's best interest as defined in Title 19-A, section 1653, subsection 3."  22 M.R.S. § 4036(1-A) (2008); *see In re Jacob C.*, 2009 ME 10, ¶¶ 5 & n.4, 7, 13, 965 A.2d 47; 22 M.R.S. § 4036(1-A) (2025).

[¶34] In another case, we reached the merits of an appeal from the denial of a motion to transfer jurisdiction of a child protection matter to a tribal court. *In re Children of Shirley T.*, 2019 ME 1, ¶¶ 10-26, 199 A.3d 221. We specifically noted that such review was not precluded by section 4006 because "[t]he decision at issue [was] not a child protection order issued pursuant to title 22; it [was] instead a jurisdictional order entered pursuant to [the Indian Child Welfare Act]." *Id.* ¶ 15 n.6.

[¶35] These cases consistently hold that when the order appealed from is entered in a child protection case but is governed by standards codified in another statute or rule, it is not an order "entered under" the Child Protection Act for purposes of 22 M.R.S. § 4006. The Court relies on *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602, as barring this appeal, Court's Opinion ¶¶ 12-14, but after we issued *In re L.R.*, we decided *Nicholas P.*, *Shirley T.*, and at least two cases reviewing orders on intervention motions in child protection cases—the exact posture presented here. *See In re Children of Mary J.*, 2019 ME 2, ¶¶ 5 & n.3, 17-18, 199 A.3d 231; *In re Child of Charles H.*, Mem-18-100 (Dec. 11, 2018). The Court today takes up the Department's request to "clarify" our prior decisions by overruling them, an unwarranted change of course.

22

[¶36]   Unlike orders on placement requests or motions to expedite review, an order granting or denying a motion to intervene is "entered in the *context* of a child protection case, but [] is not *itself* an order entered pursuant to the Child and Family Services and Child Protection Act," *In re Child of Nicholas P.*, 2019 ME 152, ¶ 29, 218 A.3d 247.  Like the parentage determination at issue in *Nicholas P.* that was governed not by the Child Protection Act but rather by the Maine Parentage Act, a decision on a motion to intervene, even when issued as part of a child protection proceeding, is governed not by the Child Protection Act but rather by Maine Rule of Civil Procedure 24.  *See id.*

[¶37]  This is borne out by the language used in the Child Protection Act. "Participants" and "interested persons" in child protective cases are indeed creatures of the Child Protection Act as opposed to rules of procedure or general law.  *See* 22 M.R.S. § 4005-D(1)(C), (E), (2)-(4), (7) (2025).  The Child Protection Act alone defines who may qualify for "interested person" or "participant" status and the nature of the rights those individuals have.[11]  *Id.*

---

[11] The Child Protection Act permits the court to grant "interested person" status to individuals as follows:

> **2. Interested persons.** Upon request, the court shall designate a foster parent, grandparent, preadoptive parent or a relative of a child as an interested person unless the court finds good cause not to do so. The court may also grant interested person status to other individuals who have a significant relationship to the child, including, but not limited to, teachers, coaches, counselors or a person who has provided or is providing care for the child.

Thus, an appeal from the denial of a request for participant or interested-person status would appear to be barred by section 4006, even if an exception to our judge-made final judgment rule would otherwise apply. *See In re Child of Nicholas P.*, 2019 ME 152, ¶¶ 28-29, 218 A.3d 247.

[¶38] In contrast, the statutory provisions concerning intervenor status in child protection proceedings make clear that Maine Rule of Civil Procedure 24—rather than the Child Protection Act —sets forth the standard to determine whether to grant intervention in child protection matters. *See* 22 M.R.S. § 4005-D(1)(D), (5) (2025). The statute addressing access to and participation in child protection proceedings defines "intervenor" as "a person who is granted intervenor status in a child protective proceeding *pursuant to the Maine Rules of Civil Procedure, Rule 24*, as long as intervention is consistent with section 4003." *Id.* § 4005-D(1)(D) (emphasis added). In addition,

> [a]n intervenor may participate in any court proceeding under this chapter as a party *as provided by the court when granting intervenor*

---

22 M.R.S. § 4005-D(2) (2025). In another subsection of the same statute, the Legislature has defined an "interested person" as "a person the court has determined as having a substantial relationship with a child or a substantial interest in the child's well-being, based on the type, strength and duration of the relationship or interest." *Id.* § 4005-D(1)(C) (2025). Similarly, the statute defines a "participant" as "a person who is designated as an interested person under paragraph C and who demonstrates to the court that designation as a participant is in the best interests of the child and consistent with section 4003." *Id.* § 4005-D(1)(E) (2025).

Participants and interested persons both have the right to attend and observe all court proceedings under the chapter; participants also have the right to be heard. *Id.* § 4005-D(3), (4).

*status under Maine Rules of Civil Procedure, Rule 24.* An intervenor has the rights of a party as ordered by the court in granting intervenor status, including the right to present or cross-examine witnesses, present evidence and have access to pleadings and records.

*Id.* § 4005-D(5) (emphasis added).

[¶39]  The Court examines legislative history in support of its holding, and yet the legislative history of this particular provision of the statute does not support the conclusion.  In 2002, the Legislature enacted "the current, comprehensive framework in 22 M.R.S. § 4005-D (2025) governing access to and participation in child protection proceedings."  Court's Opinion ¶ 20; *see* P.L. 2001, ch. 696, § 16 (effective July 25, 2002).  Before that, the statute had provided that foster parents and grandparents could petition for intervenor status.  *See* P.L. 1985, ch. 424 (effective Sept. 19, 1985) (enacting former 22 M.R.S.A. § 4005-A); P.L. 1993, ch. 697, § 1 (effective July 14, 1994) (enacting former 22 M.R.S.A. § 4005-B).  In other words, the standards governing intervenor status were set forth in and unique to the Child Protection Act.  With the changes made in 2002, the Legislature repealed those statutory standards and instead determined that whether to grant intervenor status should be decided under the general provisions of Rule 24.[12]  P.L. 2001, ch. 696, § 16; *see*

---

[12]  Although the relevant child protection statute requires that intervention must also be "consistent with" the purposes of the Child Protection Act, 22 M.R.S. § 4005-D(1)(D) (2025); *see id.*

22 M.R.S. § 4005-D(1)(D), (5). By incorporating Rule 24 as the standard, review of a decision on a motion to intervene is not precluded by section 4006 because "[t]he decision at issue . . . is not a child protection order issued pursuant to title 22; it is instead a[n] order entered pursuant to" Rule 24. *In re Children of Shirley T.*, 2019 ME 1, ¶ 15 n.6, 199 A.3d 221; *see In re Jacob C.*, 2009 ME 10, ¶¶ 7-8, 13-14, 965 A.2d 47 (relying in part on the relevant child protection statute's direct references to Title 19-A standards in concluding that a parental rights order entered in a child protection proceeding was appealable notwithstanding section 4006's limitations); *In re Child of Nicholas P.*, 2019 ME 152, ¶¶ 27-30, 218 A.3d 247. Given that the order denying the former resource parents' motion to intervene is not an order "entered under" the Child Protection Act, 22 M.R.S. § 4006, there is no reason to change our jurisprudence recognizing that such orders are immediately appealable as an exception to the final judgment rule.

[¶40] Although I would not dismiss the appeal, I think the appeal is meritless and would affirm the trial court's denial of the former resource parents' motion to intervene. The former resource parents have no right to

---

§ 4003 (2025), Rule 24 itself requires that intervention be denied if "the applicant's interest is adequately represented by existing parties" or if it "will unduly delay or prejudice the adjudication of the rights of the original parties," M.R. Civ. P. 24(a)-(b).

intervene under Rule 24(a), nor was it an abuse of discretion to deny them permissive intervention under Rule 24(b).

[¶41]  Rule 24(a) permits a person to intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest."  M.R. Civ. P. 24(a); *see In re Children of Mary J.*, 2019 ME 2, ¶ 6, 199 A.3d 231.  Intervention is "allowed only when the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  *Brown v. Zoning Bd. of Appeals of Hampden*, 391 A.2d 348, 349 (Me. 1978) (quotation marks omitted); *see also* 2 Harvey, *Maine Civil Practice* § 24:1 at 605 (3d Ed. 2011) (noting that Rule 24 did not change the law but was based on long-standing principles of equity).

[¶42]  Although the former resource parents may be "interested" in the proceeding in the sense that they care greatly about what happens, they have no legally cognizable interest in the child protection case.  Any order in the case has no direct legal operation or effect on them.  If the former resource parents wish to pursue adoption of the children, that must happen in a separate case, and that is their avenue of relief.

[¶43] In short, I see no reason to change course in our jurisprudence. I would reach the merits of the appeal from the denial of the intervention motion, but I would nonetheless affirm the District Court's decision.

—————————————

Brittany Sawyer, Esq. (orally), Holmes Legal Group, LLC, Wells, for appellants former resource parents

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2020-63
Springvale District Court docket number PC-2021-41
FOR CLERK REFERENCE ONLY